_Micros_

# JOINT INTELLECTUAL PROPERTY AGREEMENT

THIS JOINT INTELLECTUAL PROPERTY AGREEMENT (the "Agreement"), executed in Beltsville, Maryland, is made and entered into between MICROS Systems, Inc., a Maryland corporation, with its principal place of business located at 12000 Baltimore Avenue, Beltsville, Maryland (hereinafter "MICROS") and Sagent Technology, Inc., a Delaware corporation, with its principal place of business located at 800 El Camino Real, Suite 300, Mountain View, California 94040 (hereinafter "Sagent").

WHEREAS, MICROS and Sagent have jointly developed certain Intellectual Property, as defined in Section 1.2 hereof; and

WHEREAS, Sagent agrees to accept the consideration under this agreement instead of its normal fees for its work on the development of the Intellectual Property.

WHEREAS, MICROS and Sagent shall jointly own the Intellectual Property, subject to the license restrictions contained herein.

NOW, THEREFORE, MICROS and Sagent, for good and valuable consideration and pursuant to the terms, conditions, and covenants contained herein, hereby agree as follows.

1.0   DEFINITIONS

1.1   <u>Hospitality Industry</u>. "Hospitality Industry" as used herein shall mean, without limitation, any business, establishment, property or enterprise which sells, dispenses or distributes food products or alcoholic or nonalcoholic beverages, or which offers lodging accommodations. The Hospitality Industry includes food establishments, whether quick service or table service, bars, convenience stores, theme parks, stadia, casinos, cruise ships, riverboat enterprises, hotels, motels, and other lodging establishments.

1.2   <u>Intellectual Property</u>. Intellectual Property is used herein to mean those items identified below:

The following 4 database schemas and associated creation scripts for the _Insight Data Warehouse TSR and QSR_ family of products: (i) _Insight TSR;_ (ii) _Total Insight TSR;_ (iii) _Insight QSR;_ and (iv) _Total Insight QSR._

* Sagent Data Movement Plans for the movement, transformation and summarization of data from POS system(s) to _Insight Data Warehouse_ schema.
* Sagent Automation Server Plans for automating the data load process for _Insight Data Warehouse._

12/8/99

1

EXHIBIT A

S00036

- A Microsoft Access application to supply custom definitions for Stores and Menus Items to the data warehouse, and to maintain Promotions and Events information.
- Sagent Plans for Pre-defined end-user reports which may be developed using Sagent tools and delivered with the *Insight Data Warehouse* product offering
- Documentation of Intellectual Property including end user manuals, technical manuals, training manuals or any online or embedded documentation.
- Product marketing descriptions or marketing materials associated with the Intellectual Property.

This definition shall not include the following components:
- MICROS Software Products and associated point-of-sale data extraction programs, or any products independently developed by MICROS.
- Sagent Software Products, or any products independently developed by Sagent.

1.3 <u>Retail Industry.</u> "Retail Industry" as used herein shall mean, without limitation, any business, establishment, property or enterprise which sells, dispenses, distributes or makes available consumer products to the general public at the wholesale or retail level. For purposes of this Agreement, the broadest and most comprehensive definition of Retail Industry shall be utilized.

2.0 OWNERSHIP OF INTELLECTUAL PROPERTY

2.1 <u>Ownership.</u> On the terms and subject to the conditions of this Agreement, Sagent and MICROS shall jointly own and hold all rights, title and interests in the Intellectual Property. Notwithstanding the above, Sagent shall be prohibited from distributing, marketing, licensing or reselling the Intellectual Property for any use in either the Hospitality Industry or the Retail Industry. This prohibition shall survive termination or expiration of the Agreement until the fourth anniversary of the effective date of the termination or expiration.

2.2 <u>Enhancements.</u>
(a) Each party is permitted to perform, render, prepare and implement any modifications, enhancements, improvements or redesigns to the Intellectual Property deemed desirable, appropriate or necessary. The developing party shall own exclusively any and all adaptations, modifications and enhancements it may prepare to the Intellectual Property.
(b) Should either party desire to implement modifications, enhancements, improvements or redesigns to the Intellectual Property, they agree to notify the other party of their intention. Both parties shall meet and discuss such development. Each party shall have the right of first refusal to co-develop such enhancements or modules. In the event either party elects not to co-develop such enhancements or modules, then such declining party shall not

have any rights to royalties for such development, provided the amount of royalties to the Intellectual Property does not decline.

2.3 No Obligation to Use. Nothing in this Agreement shall be deemed to obligate either party to use the Intellectual Property. The use, the extent of use, and the continuation of use of the Intellectual Property shall at all times be within the sole discretion and control of each party. Notwithstanding the foregoing, either party's failure to use the Intellectual Property shall not relieve such party of any of its obligations hereunder

2.4 Expenses. Each party hereunder shall be solely responsible for all of its own expenses, fees, charges, costs, and liabilities it may incur in performing its development obligations hereunder. Neither party shall have any obligation to fund or reimburse the other party in connection with the other party's performing its development obligations required hereunder.

3.0 MARKETING, SALES, CONSULTING AND SUPPORT SERVICES

3.1 Sagent Marketing and Sales Assistance. Sagent may assist MICROS in actively marketing, distributing, licensing and selling the Intellectual Property to customers and potential customers in the Hospitality Industry and the Retail Industry. All marketing and sales efforts shall be coordinated in conjunction with Micros. All contracts, agreements or understandings with customers and potential customers in the Hospitality or Retail Industry as it relates to the jointly developed Intellectual Property shall be entered into directly with MICROS. Sagent is prohibited from marketing, distributing, licensing or selling the Intellectual Property to customers and potential customers in the Hospitality Industry and the Retail Industry, without the express written consent of MICROS. This prohibition shall survive termination or expiration of the Agreement until the fourth anniversary of the effective date of the termination or expiration.

3.2 Sagent Consulting Services. At the request of MICROS, Sagent may provide consulting services relating, either directly or indirectly, to the Intellectual Property. Sagent may provide such consulting services to MICROS as a subcontracting entity to MICROS customers in the Hospitality Industry and the Retail Industry. All consulting services agreements with MICROS' customers related to the Intellectual Property in the Hospitality Industry or the Retail Industry shall be in the name of MICROS. MICROS and Sagent shall allocate consulting fees received under any such contracts on the basis of each party's respective effort. MICROS agrees to reimburse Sagent for reasonable travel expenses related to any consulting and training services provided as a subcontracting entity to MICROS. Payment terms for all services and related expenses are Net 30 from invoice date.

S00038

3.3   Expenses.  Each party hereunder shall be solely responsible for all of its own expenses, fees, charges, costs, and liabilities it may incur in performing its marketing, sales and consulting obligations hereunder. Neither party shall have any obligation to fund or reimburse the other party in connection with the other party's performing its marketing, sales and consulting obligations required hereunder.

3.4   Technical Support of Intellectual Property.  MICROS will provide technical support of Intellectual Property to customers. All revenues received for technical support and maintenance of the Intellectual Property will be received by MICROS. Per the terms of the Value-Added Reseller Agreement, Sagent shall receive its agreed to fees for maintenance and technical support of the Sagent Data Mart products.

4.0   ROYALTY OBLIGATIONS

4.1   Royalty Payments Due MICROS.  For the term of this Agreement, and provided MICROS is not in default hereunder, Sagent shall pay to MICROS a royalty in the amount of 50% of any and all fees received by Sagent, directly or indirectly, in connection with the sale, license, sub-license or distribution of the Intellectual Property. No royalty shall be paid on fees received by Sagent for services or products (whether third party products or independently developed Sagent product) other than the Intellectual Property, even if such are sold in conjunction with the Intellectual Property. The royalty payable hereunder shall be paid by Sagent to MICROS upon the earlier of: (i) 15 days after receipt by Sagent of the payment for which the royalty is due; or (ii) 90 days after the completion of installation and full implementation of the Intellectual Property at the customer site for which the royalty is due.

4.2   Royalty Payments Due Sagent.  For the term of this Agreement, and provided Sagent is not in default hereunder, MICROS shall pay to Sagent a royalty in the amount of 50% of any and all fees received by MICROS, directly or indirectly, in connection with the sale, license, sub-license or distribution of the Intellectual Property. No royalty shall be paid on fees received by MICROS for services or products (whether third party products or independently developed MICROS products) other than the Intellectual Property, even if such are sold in conjunction with the Intellectual Property. Further, no royalty shall be paid on fees received by MICROS for any data warehouse products or functionality that MICROS independently develops as an adjunct to or a component of its Opera software, central reservation system software, or customer information system software, whether for the Hospitality Industry, Retail Industry or otherwise. The royalty payable hereunder shall be paid by MICROS to Sagent upon the earlier of: (i) 15 days after receipt by MICROS of the payment for which the royalty is due; or (ii) 90 days after the completion of installation and full implementation of the Intellectual Property at the customer site for which the royalty is due.

S00039

4.3. **Termination of Royalties.** Upon termination of the Agreement, the parties agree to continue royalty payments on future sales of the Intellectual Property for a period of 4 years after the date of termination, unless such Intellectual Property is substantially altered under the terms of Paragraph 5.4. The continuation of payment on these royalties after the effective date of the termination shall be based on a 4 year declining royalty schedule. This schedule is as follows:

| | |
|---|---|
| Year 1 | 80% of the Royalty amount due as agreed in 4.1 and 4.2 |
| Year 2 | 60% of the Royalty amount due as agreed in 4.1 and 4.2 |
| Year 3 | 30% of the Royalty amount due as agreed in 4.1 and 4.2 |
| Year 4 | 20% of the Royalty amount due as agreed in 4.1 and 4.2 |

4.4 Records and Inspection. Both parties shall maintain records of all licenses and services related to the Intellectual Property for a period of two years. On five days written notice, either party may inspect the records of the other party to confirm the accuracy of the royalty payments. In the event the royalty was underpaid, the amounts due shall be paid within ten days and shall pay interest from the date first due at the rate of 1.5% per month. If the inspection shows that the royalties were under reported or paid by 10% of the amounts paid per period, the costs and fees related to the inspection will be paid by the under-reporting party.

4.5 **Minimum Royalty Payments Due.** In no event shall a Royalty payment for a sale, license, sub-license or distribution of the Intellectual Property be based on a sale price that is less than 50% of the then current standard list price of the Intellectual Property (as provided in written documentation), without the prior written approval signed by officers of MICROS and Sagent. Accordingly, the Royalty payment shall not be in an amount of less than 25% of the then current standard list price of the Intellectual Property (as provided in written documentation).

5.0 TERM AND TERMINATION

5.1 **Term.** This Agreement shall commence as of the date indicated above, and shall continue for a period of one (1) year. The Agreement shall thereafter automatically renew, unless either party provides written notice to the other. After the initial first year term, either party may terminate this Agreement at any time upon 90 days prior written notice to the other party.

5.2 **Termination by MICROS.** MICROS may terminate this Agreement by giving thirty (30) days notice to Sagent in the event Sagent is in material default hereunder, and Sagent fails to cure materially such default prior to the effective date of the termination. In the event MICROS terminates this Agreement in accordance with the terms hereof, MICROS shall be relieved of any further payment obligations hereunder.

12/8/99

5

S00040

5.3 <u>Termination by Sagent.</u> Sagent may terminate this Agreement by giving thirty (30) days notice to MICROS in the event MICROS is in material default hereunder, and MICROS fails to cure materially such default prior to the effective date of the termination. In the event Sagent terminates this Agreement in accordance with the terms hereof, Sagent shall be relieved of any further payment obligations hereunder.

5.4 <u>Termination Obligations.</u> Upon termination by either party through the provisions of paragraph 5.2, 5.3, or upon expiration of this agreement without extension or modification, the parties agree to honor royalty obligations for the Intellectual Property for all sales after termination as outlined in paragraph 4.3. Such royalty obligations shall remain in force only for the Intellectual Property described in Section 1.2 and shall not prevent either party from substantially altering the Intellectual Property, at that party's expense, so that the resulting work product constitutes a new item of intellectual property wholly and completely owned by the altering party. Substantial alteration means the complete replacement of any component of the product as defined is Section 1.2.

5.5 Nothing in this agreement shall prevent either party, upon termination or expiration of the agreement, from creating new and unique Intellectual Property for the Hospitality or Retail industry.

6.0 INDEMNITIES

6.1 <u>Sagent Intellectual Property Indemnity.</u> Sagent shall, at its own expense, defend or settle any claim, suit or proceeding brought against MICROS, based on an allegation that any portion of the Intellectual Property solely prepared by Sagent, or any enhancements to the Intellectual Property solely prepared by Sagent (individually and collectively, the "Sagent Property") constitute a direct or contributory infringement of any claim of any patent, mask work or copyright, or any violation of any other intellectual property rights of the US if an equivalent patent, mask work or copyright. This obligation shall be effective only if MICROS shall have made all payments then due and if Sagent is notified of the allegation promptly in writing and given authority, information, and assistance for the settlement or defense of the claim, suit or proceeding. Sagent shall pay all damages and costs assessed in such suit or proceedings. In the event of a final adjudication by a court of competent jurisdiction that the Sagent Property infringes or violates any third party intellectual property right or if the use or sale thereof is enjoined, or if the terms of any settlement agreement prohibit the use of the Sagent Property, Sagent at its option and its own expense shall either: (a) procure for MICROS the right to continue using the Sagent Property; (b) replace the Sagent Property with a noninfringing equivalent; (c) modify the Sagent Property so it becomes noninfringing; or (d) pay to MICROS all costs incurred by MICROS as a result of Sagent' breach hereunder, including reimbursement of any and all fees paid hereunder.

12/8/99

6

6.2  MICROS Intellectual Property Indemnity. MICROS shall, at its own expense, defend or settle any claim, suit or proceeding brought against Sagent, based on an allegation that any portion of the Intellectual Property solely prepared by MICROS, or any enhancements to the Intellectual Property solely prepared by MICROS (individually and collectively, the "MCROS Property") constitute a direct or contributory infringement of any claim of any patent, mask work or copyright, or any violation of any other intellectual property rights of the US if an equivalent patent, mask work or copyright. This obligation shall be effective only if Sagent shall have made all payments then due and if MICROS is notified of the allegation promptly in writing and given authority, information, and assistance for the settlement or defense of the claim, suit or proceeding. MICROS shall pay all damages and costs assessed in such suit or proceedings. In the event of a final adjudication by a court of competent jurisdiction that the MICROS Property infringes or violates any third party intellectual property right or if the use or sale thereof is enjoined, or if the terms of any settlement agreement prohibit the use of the MICROS Property, MICROS at its option and its own expense shall either: (a) procure for Sagent the right to continue using the MICROS Property; (b) replace the MICROS Property with a noninfringing equivalent; (c) modify the MICROS Property so it becomes noninfringing; or (d) pay to Sagent all costs incurred by Sagent as a result of MICROS' breach hereunder, including reimbursement of any and all fees paid hereunder.

7.0  TRADEMARK

Usage of Trademark. Sagent shall acquire no proprietary rights with respect to the "MICROS" or "Fidelio" trade names, trade marks and service mark (individually and collectively, the "Trademark"). Sagent shall not: (i) use the Trademarks in any legal designation; or (ii) in any manner state, imply or suggest that Sagent is an affiliate or subsidiary of MICROS. MICROS retains full control over the Trademark, and nothing herein shall limit or modify MICROS' right to pursue its legal remedies in the event of violation by others of MICROS' rights in such Trademark. Notwithstanding the above, MICROS, in its sole and absolute discretion, may in writing license the Trademark to Sagent for the sole purpose of assisting Sagent in performing its obligations pursuant to Section 3.1 hereof.

8.0  COVENANTS AND RESPONSIBILITIES

8.1  Confidential Information. Each party shall keep the other party's proprietary or confidential information, including enhancements to the Intellectual Property, or any part thereof, confidential and shall protect it from disclosure. The parties acknowledge that any unauthorized use or disclosure of the other party's proprietary or confidential information may cause irreparable damage to the other party. The parties agree that a monetary remedy for any breach of this Section 8.1 would be inadequate and would be impracticable and extremely difficult to prove and

12/8/99                                      7

S00042

further agrees such a breach would cause irreparable harm. Therefore, without waiving its right to any other form of relief, a party shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages. The parties further agree that either party shall be entitled to such injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions, without the necessity of posting any bond or other undertaking in connection therewith. All parties hereby waive any such requirement of bond or undertaking. If any provision of this Section 8.1 is invalid in part, it shall be curtailed, whether as to time, location or otherwise only to the extent required for it to be valid under the laws of the State were an action may be brought..

8.2    Solicitation of Employees. MICROS recognizes the employees of Sagent, and such employees' loyalty and service to Sagent, constitute a valuable asset of Sagent. Accordingly, MICROS agrees not to make any offer of employment to, nor enter into a consulting relationship with, any current employee of Sagent or any former employee who was employed by Sagent within one (1) year of such person's employment by Sagent. Sagent recognizes the employees of MICROS, and such employees' loyalty and service to MICROS, constitute a valuable asset of MICROS. Accordingly, Sagent agrees not to make any offer of employment to, nor enter into a consulting relationship with, any current employee of MICROS or any former employee who was employed by MICROS within one (1) year of such person's employment by MICROS.

8.3    Notification of Changes in Design of Specifications of Sagent Products. Sagent shall use best commercial efforts to notify MICROS of changes in the design or specifications of the Sagent Data Mart Products.

9.)    LIMITATION OF LIABILITY

9.1    Damage Disclaimer. EACH PARTY HEREUNDER ACKNOWLEDGES AND AGREES THAT THE OTHER (OR ITS AFFILIATES) SHALL NOT BE RESPONSIBLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING LOST PROFITS, BUSINESS INTERRUPTION, OR OTHER INCIDENTAL, ECONOMIC OR PUNITIVE DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

10.0    ASSIGNMENT AND SUBLICENSING

Assignment. Either party may assign this Agreement.

11.0    MISCELLANEOUS

11.1    Force Majeure. Neither party to this Agreement will be held liable for failure to perform any obligation hereunder for delay in performance resulting from or

12/8/99

contributed to by any cause beyond the reasonable control of either party from any act of God, act of civil or military authority, act of war, whether declared or undeclared, act (including delay, failure to act, or priority) of any governmental authority, civil disturbance, insurrection or riot, sabotage, fire, severe weather conditions, earthquake, flood, strike, work stoppage or other labor difficulty, embargo, delay in transportation, or any other delay beyond either party's control.

11.2 Waivers. The failure of either party to enforce at any time the provisions of this Agreement, or to require at any time the performance by the other party of any such provisions, shall in no way be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement, or the right of either party thereafter to enforce each and every provision.

11.3 Modifications. No waiver, modification, or amendment of any of the provisions of this Agreement shall be binding unless it is in writing and signed by the duly authorized representatives of the parties hereto.

11.4 Relationship of the Parties. Under the terms of this Agreement, Sagent is not an employee agent, partner, contractor, or representative of MICROS. Furthermore, nothing contained herein shall be deemed to create a joint venture relationship between MICROS and Sagent. The respective obligations and rights of MICROS and Sagent are limited by the terms of this Agreement, and both parties acknowledge that they do not have authority to incur any obligations or responsibilities on behalf of the other.

11.5 Governing Law. Any action relating to this Agreement shall be brought in Santa Clara County California. This agreement shall be governed by the laws of the State of California. The prevailing party in any action shall recover its attorney's fees.

11.6 Integration. This Agreement contains the entire agreement and understanding between the parties as to the subject matter hereof, and merges and supersedes all prior agreements, commitments, representations, writings and discussions between them. Neither of the parties will be bound by any prior obligations, conditions, warranties, or representations with respect to the subject matter of this Agreement.

11.7 Survival. The provisions of Section 2.3, titled "Ownership;" Article 6, titled "Indemnities;" Article 7, titled "Trademark"; Article 8, titled "Covenants and Responsibilities"; Article 9, titled "Limitation of Liability;" Article 10, titled "Limitation of Liability;" and Article 11, titled "Miscellaneous," shall survive the termination or expiration of this Agreement.

11.8 Notices. Any notices pursuant to default, cancellation, or termination or expiration of this Agreement shall be sent by registered or certified mail to the parties at the addresses in this Section 11.8. Any such notices shall be deemed for the purposes of

this Agreement to have been received by their recipient three (3) days after mailing, excluding Saturdays and Sundays.

To MICROS at:

> MICROS Systems, Inc.
> 12000 Baltimore Avenue
> Beltsville, MD 20705
> Attn.: Thomas L. Patz, Vice President, General Counsel

To Sagent at:

> Sagent Technology, Inc.
> 800 El Camino Real, Suite 300
> Mountain View, CA 94040
> Attn: Legal Department

11.9 **Severability.** Should any provision of this Agreement be declared illegal or unenforceable by a court of competent jurisdiction, the remainder of this Agreement shall remain in full force and effect.

11.10 **Authority.** Sagent has the full right, power and authority to enter into this Agreement and that Sagent' entering into this Agreement shall not result in a breach of or constitute a default under any agreement or instrument to which it is a party or by which it is bound. MICROS has the full right, power and authority to enter into this Agreement and that MICROS' entering into this Agreement shall not result in a breach of or constitute a default under any agreement or instrument to which it is a party.

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as evidenced below by the signatures of their duly authorized representatives.

MICROS SYSTEMS, INC.

By: Gregory A. Earp
Its: VP-ESD
Date: 12/8/99

SAGENT TECHNOLOGY, INC.

By: W. VIRGINIA WALKER
Its: Exec Vice Pres, CFO
Date: 12/8/99