IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAGENT TECHNOLOGY, INC. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JFM-02-2505 |
| MICROS SYSTEMS, INC., et al | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF
SAGENT TECHNOLOGY, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Sagent Technology, Inc. ("Sagent"), Plaintiff, by and through undersigned counsel, hereby submits this Memorandum of Law in support of its Motion for Summary Judgment. The undisputed evidence in the record establishes that on June 30, 2000, in response to a price quote from Sagent, Micros generated and sent to Sagent a Purchase Order for the purchase of software and related products for $136,000.[1] The Purchase Order was in writing, was signed by Peter Rogers, Vice President of Business Development and Investor Relations at Micros, and specified the products to be purchased. The Purchase Order constituted an offer that Sagent accepted by promptly shipping to Micros the products referenced therein. However, Micros has never paid Sagent any portion of the money it owes to Sagent as a result of this transaction, a material breach of the written contract between the parties. Sagent's resulting damages, including prejudgment interest, total $133,393.79.

There being no genuine issue as to any material fact, Sagent is entitled to judgment as a matter of law and summary judgment should be entered in its favor.

---

[1] As discussed below, the value of the contract was subsequently amended to $112,000, with the consent of the parties.

I.   BACKGROUND

This case arises from Micros' breach of its June 30, 2000 written contract with Sagent to purchase from Sagent software and related maintenance services. The record is clear that on or about June 20, 2000 Dan Van Veelen, of Sagent, sent to Peter J. Rogers, Jr., Vice President of Business Development and Investor Relations at Micros, a price quote for the purchase of certain software and related products and technical support, consisting, in part, of a data access package and an analytical calculator. See Deposition Transcript of Peter J. Rogers, Jr. (Exhibit A hereto) at 18-20; Deposition Transcript of Dan Van Veelen (Exhibit B hereto) at 69. A copy of the Sagent price quote is attached hereto as Exhibit C. Rogers has testified that on June 30, 2000 "the decision was made" by Micros and that he – that same day – generated a letter to Van Veelen[2] "providing a purchase order for Micros .... to acquire [from Sagent] the data access package and analytical calculator." Rogers Tr. (Exhibit A) at 12, 18.[3] A copy of the Micros Purchase Order is attached hereto as Exhibit D.[4] As reflected in Exhibit D, the value of the contract was $136,000. Additionally, Rogers testified that he wrote "approved" on the Sagent price quote Van Veelen had provided, added his job title, signed it, and attached it to the Purchase Order he sent to Van Veelen. Rogers Tr. (Exhibit A) at 19, 21.

---

[2] Rogers has testified that as of June 30, 2000 he understood Dan Van Veelen to be the "direct sales contact" for Sagent. Rogers Tr. (Exhibit A) at 19.

[3] Rogers confirms that it his signature that appears on the Purchase Order he sent to Van Veelen. Rogers Tr. (Exhibit A) at 18-19.

[4] Scott Callnin of Micros was also involved in this transaction and has confirmed that Rogers' June 30, 2000 letter to Van Veelen constitutes a Purchase Order, a document which he describes as "an agreed upon price and recognition that a transaction is desired to take place between the two companies at that price." Callnin Tr. (Exhibit E) at 13-16.

Indeed, Rogers characterized the Sagent price quote and subsequent Purchase Order from Micros as follows: "This is the quote provided from Sagent to myself that I was to attach to the letter <u>authorizing the acquisition of the product</u>." Rogers Tr. (Exhibit A) at 19 (emphasis added).[5] Rogers confirmed that the June 30, 2000 Purchase Order he sent to Dan Van Veelen at Sagent reflected precisely the same products and services seen in Sagent's price quote. Rogers Tr. (Exhibit A) at 21. Rogers has also confirmed that Sagent delivered to Micros the software Micros had ordered in its Purchase Order. Rogers Tr. (Exhibit A) at 43-44. Finally, Rogers confirms that Micros has never paid Sagent any portion of the money it owes for the software it purcahsed from Sagent. Rogers Tr. (Exhibit A) at 21-22.

In the light of this undisputed evidence, there can be no question that Micros contracted to purchase software from Sagent, that Sagent delivered to Micros precisely what Micros had ordered, and that Micros has failed to pay Sagent for that software. Finally, Sagent's resulting damages are liquidated and readily verifiable. There is no genuine issue as to any material fact to be considered by the factfinder and Sagent is entitled to judgment as a matter of law.

## II.   THE SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. Proc. 56 (c), summary judgment shall be entered when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c); <u>First Nat. Bank v. Cities Serv.</u>, 391 U.S. 253, 288 (1968); <u>Morrison v. Nissan Co. Ltd.</u>, 601 F.2d 139, 141 (4th Cir. 1979); <u>see</u> <u>also</u>, Md. R. 2-501; <u>Fairfax Sav., F.S.B. v. Ellerin</u>, 94 Md.App. 685, 619 A.2d 141, <u>cert</u>. <u>granted</u>, 329 Md. 756, 621 A.2d 897, <u>aff'd</u> <u>in</u> <u>part</u>,

---

[5] <u>See</u> <u>also</u> Rogers Tr. (Exhibit A) at 44 ("I just know that I placed an order for software.").

vacated in part, 337 Md. 216, 652 A.2d 1117 (1993).  The purpose of the summary judgment proceeding is to decide whether there is an issue of fact sufficiently material to be tried to the factfinder, not to try the case or to resolve factual disputes.  Hartford Ins. Co. v. Manor Inn of Bethesda, Inc., 335 Md. 135, 642 A.2d 219 (1994).

Under Maryland law, courts may construe unambiguous contracts as a matter of law.  Pacific Indem. Co. v. Interstate Fire & Cas. Co., 302 Md. 383 (1985).  Indeed, if the language of the contract is clear and unambiguous, it will prevail even if it is not what the parties intended.  Auction & Estate Representatives. v. Ashton, 354 Md. 333, 340, 731 A.2d 441, 444 (1999).

III.   ARGUMENT

    A.   The Contract Between Sagent and Micros Is Governed by the UCC and Satisfies the Statute of Frauds.

As the contract at issue in the instant case contemplates a "transaction in goods," it is governed by Maryland's Uniform Commercial Code ("UCC"), codified at Md. Code Ann. Com. Law I §§ 2-101 et seq. (2002 Repl. Vol.)[6]  See id. at § 2-102.  The UCC defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title

---

[6] Although the contract initially contemplated the provision of services (maintenance and support) as well as the sale of goods (software), see Exhibit D, at Micros' request, Sagent later agreed to eliminate the maintenance and support component of the contract.  See Exhibit F.  However, even if the maintenance and support component remained as a part of the contract, the "predominant purpose" analysis, see Kirby v. Chrysler Corp., 554 F. Supp. 743 (D. Md. 1982); Snyder v. Herbert Greenbaum Assocs., 38 Md. App. 144, 380 A.2d 618 (1977), would compel the conclusion that the contract is predominantly one for the sale of goods and the provision of services is merely incidental thereto.  Evidence of this is seen in the fact that the $24,000 value of the maintenance and support component is far outweighed by the value of the software sold, $112,000.  See Exhibit D.  Under either scenario, therefore, the contract is one for the sale of "goods" and is governed by the UCC.

8) and things in action." Id. at § 2-105(1).  Several courts have held that computer software constitutes "goods" within the meaning of the UCC when the software code exists on a disc or other medium that is tangible and moveable at the time of the sale.  Advent Sys. Ltd. v. Unisys Corp., 925 F.2d 670, 675 (3rd Cir. 1991); Delorise Brown, Inc. v. Allio, 86 Ohio. App. 3d 359, 362, 620 N.E.2d 1020, 1021 (1993).  The evidence in the record is clear that the software at issue in the case at bar was housed on such a disc.  Callnin Tr. (Exhibit E) at 59.  Therefore, the UCC governs the contract between Sagent and Micros.

     The UCC requires that a contract for the sale of goods for the price of $500 or more be in writing.  See Md. Ann. Code Com. Law I § 2-201(1).  As reflected in Exhibit D, there is no dispute that the contract at issue in this case contemplates the sale of "goods" valued at more that $500.  The Statute of Frauds has only three invariable requirements: 1) that the writing evidence a contract for the sale of goods, 2) that it be signed, 3) that it specify a quantity of the "goods" to be sold.  See Md. Ann. Code Com. Law I § 2-201 Official Cmt. 1.  As reflected in Exhibit D, the price quote from Sagent and the Micros Purchase Order reflect these terms and more.  First, both documents are signed by Peter Rogers, a Micros Vice President.  Second, both evidence a contract for the sale of goods.  Third, the Sagent price quote specifies that the contract is for the sale of  "1 Data Access Server (2 cpu); Design Studio with Reports & Analysis; Admin. and Automation."  See Exhibit D.  The contract, therefore, satisfies the Statute of Frauds.

      B.    <u>The Price Quote and Purchase Order Signed By Peter Rogers Constitute An Offer That Sagent Accepted By Promptly Shipping Conforming Goods</u>.

Under the UCC, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." <u>See</u> Md. Ann. Code Com. Law I § 2-204(1). An essential element for the formation of a contract is an objective manifestation of mutual assent by the parties, sometimes referred to as a "meeting of the minds." <u>See</u> <u>Maryland Supreme Corp. v. Blake Co.</u>, 279 Md. 531, 369 A.2d 1017, 1023 (1977). Without more, price quotes amount only to an invitation to enter into negotiations and are considered an invitation for an offer. <u>Id</u>. at 539; <u>see</u> also <u>Dyno Constr. Co. v. McWane, Inc.</u>, 198 F.3d 567, 572 (6th Cir. 1999). "Typically, a seller's price quotation is an invitation for an offer, <u>and the offer usually takes the form of a purchase order</u>, providing product choice, quantity, price, and terms of delivery." <u>Audio Visual Assocs., Inc. v. Sharp Electronics Corp</u>., 210 F.3d 254, 259 (4th Cir. 2000) (applying Maryland law) (emphasis added). As reflected in Exhibit D, the Purchase Order generated by Micros and sent to Sagent reflects all of these factors and therefore constitutes an offer. Moreover, Peter Rogers' signatures on the price quote from Sagent as well as the Purchase Order he sent to Dan Van Veelen evidence his assent to the terms of the contract. <u>See</u> <u>Porter v. General Boiler Casing Co.</u>, 284 Md. 402, 396 A.2d 1090 (1976).

The UCC provides that the seller can accept an offer in any of several ways, including by promptly shipping conforming or nonconforming goods. <u>See</u> Md. Ann. Code Com. Law I § 2-206(1)(b). The record in the instant case is clear -- and undisputed -- that upon receipt of the Micros Purchase Order Sagent promptly shipped to Micros' office in Beltsville, Maryland the software and analytical calculator that Micros had ordered. <u>See</u> Rogers Tr. (Exhibit A) at 43-44; Callnin Tr.

(Exhibit E) at 58-59.

      C.    <u>Micros Admits It Has Not Paid Sagent Any of the Money It Owes for the Software Purchase, a Material Breach of Its Contract With Sagent.</u>

As noted above, Micros does not dispute that it has not paid Sagent for any of the software it contracted to purchase from Sagent. Rogers Tr. (Exhibit A) at 21-22. In his deposition, Scott Callnin of Micros offered a rather feeble excuse for Micros' failure to make payment to Sagent. Callnin testified that there was initially some confusion and resulting frustration in having an invoice generated from Sagent that reflected accurately the revised product mix contemplated by the sale. Callnin Tr. (Exhibit E) at 16-17. By his e-mail dated February 8, 2001, Callnin asked Van Veelen to delete the $24,000 maintenance and support component of the transaction and reconfigure the product mix seen in Micros' June 30, 2000 Purchase Order to reflect the sale of two Data Loads and one analytical calculator. <u>See</u> Exhibit F. Callnin closed his e-mail by promising to see that Sagent would be paid "ASAP" if the invoice could be revised as requested. <u>Id</u>. Within 17 minutes of this request from Callnin, Van Veelen promptly approved the request. <u>Id</u>. The value of the transaction after deletion of the $24,000 maintenance and support component was $112,000, as confirmed by Callnin in his deposition. Callnin Tr. (Exhibit E) at 29.

The only explanation offered by Callnin for Micros' refusal to pay Sagent for the software it had purchased was because of the inability to get a corrected invoice from Sagent that reflected the deletion of the maintenance and support component and the revised product mix to which the parties had agreed. Callnin Tr. (Exhibit E) at 17, 30-31, 35. Indeed, Callnin even testified that he would have given his "blessing" to paying Sagent had Sagent been able to provide a corrected invoice. Callnin Tr. (Exhibit E) at 35-36. However, the record is clear that Micros received a corrected invoice from Sagent on October 18, 2001. <u>See</u> Callnin Tr. (Exhibit E) at 31, 55. A copy

of the corrected invoice and accompanying e-mail are attached hereto as Exhibit G. Despite being provided with a corrected invoice on October 18, 2001, Micros has persisted in its refusal to pay Sagent, a material breach of its contract with Sagent.

IV. DAMAGES

Assuming the Court finds that Micros breached its contract with Sagent, there can be little doubt as to Sagent's corresponding damages. As a general proposition, under Maryland law the non-breaching party is to be put in the position it would have been had the breach never occurred. National Micrographic Sys., Inc., v. OCE-Indus., Inc. 55 Md. App. 526, 465 A.2d 862, cert. denied, 470 A.2d 353 (1984); Dialist Co. v. Pulford, 42 Md. App. 173, 399 A.2d 1374 (1979). As set forth above, the value of the original contract was $136,000. See Exhibit D. However, as Sagent accommodated Micros' request that the maintenance and support component of the contract (having a value of $24,000) be deleted, the revised value of the contract is $112,000. In addition to the principal value of the contract, Micros is responsible for prejudgment interest from July 30, 2000 to the present. Under Maryland law, prejudgment interest is awarded as a matter of right in breach of contract cases where the contract requires payment of a sum certain on a date certain. See Affiliated Distillers Brands Corp. v R.W.L. Wine & Liquor Co., 213 Md. 509, 519, 132 A.2d 582, 587 (1957); Travel Comm., Inc. v. Pan Am. World Airways, 91 Md. App. 123, 188, 603 A.2d 1301, 1333, cert. denied, 327 Md. 525, 610 A.2d 797 (1992); Restatement (Second) of Contracts § 354(1) (1981). The legal rate of prejudgment interest in Maryland is six percent. See Maryland Nat'l Bank v. Cummins, 322 Md. 570, 599-600, 588 A.2d 1205, 1219 (1991).

As reflected in Exhibit D, the contract specifies that the terms of the contract are "net 30 [days]." Accordingly, Micros was required to pay Sagent the contract price by July 30, 2000.

Compounded annually from July 30, 2000 to the present, 6% interest on a principal debt of $112,000 totals $21,393.79. That amount, added to the value of the underlying contract, brings Sagent's total damages on its breach of contract claim to $133,393.79.

V.     CONCLUSION

The undisputed evidence in the record establishes that on June 30, 2000, in response to a price quote from Sagent, Micros generated and sent to Sagent a Purchase Order for the purchase of software and related products. The Purchase Order was in writing, was signed by Peter Rogers, Vice President of Business Development and Investor Relations at Micros, and specified the products to be purchased. The Purchase Order constituted an offer that Sagent accepted by promptly shipping to Micros the products referenced therein. However, Micros has never paid Sagent any portion of the money it owes to Sagent as a result of this transaction, a material breach of the written contract between the parties. Sagent's resulting damages total $133,393.79.

Respectfully submitted,

*Scott H. Phillips*
Scott H. Phillips, #013244
SEMMES, BOWEN & SEMMES
250 W. Pratt Street
Baltimore, Maryland 21201
(410) 539-5040

Counsel for Sagent Technology, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of April, 2003, a copy of the foregoing Memorandum of Law in Support of Sagent Technology, Inc.'s Motion for Summary Judgment was filed and served electronically on all counsel of record.

*Scott H. Phillips*
Scott H. Phillips

(B0333457.WPD;1)