IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**SAGENT TECHNOLOGY, INC.**      *

    **Plaintiff**      *

    v.      *   Case No. JFM-02-2505

**MICROS SYSTEMS, INC.**      *

    **Defendant**      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

MICROS Systems, Inc. ("MICROS"), by counsel, files this Opposition to the Motion to Dismiss or for Summary Judgment filed by Sagent Technology, Inc. ("Sagent"). In its motion, Sagent argues, inter alia, that certain counts are subject to dismissal for improper venue, certain counts fail to state a claim upon which relief may be granted, and one count fails to state a cause of action recognized under Maryland law. For the reasons discussed below, Sagent's motion should be denied.

    **I.**      **The Parol Evidence Rule Does Not Require Dismissal Of The Counterclaim.**

In its motion to dismiss, Sagent seeks to exclude parol evidence of oral statements made by its personnel relating to the contract executed by MICROS and Sagent in 1999 (the "Joint IP Agreement"), and the alleged contract documents exchanged in June 2000 (the "Conditional Purchase Order"). The motion should be denied because, under Maryland law, the referenced oral statements are admissible.[1]

---

[1] Sagent references a parallel motion in limine and contends that the grant of that motion in limine would warrant dismissal of these counts. For the reasons stated in MICROS's opposition to the motion in limine, that motion should be denied. To the extent applicable here, MICROS's opposition to the motion in limine is incorporated by reference here.

Count II of the counterclaim asserts that Sagent engaged in negligent misrepresentation with respect to the Conditional Purchase Order, thereby inducing MICROS to send Sagent the Conditional Purchase Order.  Count III of the counterclaim asserts that Sagent breached the implied covenant of good faith and fair dealing in its transactions with MICROS under the Joint IP Agreement.  Count IV alleges fraud in the inducement by Sagent to cause MICROS to enter into the Joint IP Agreement.

The parol evidence rule, in Maryland, states:

> "[P]arol evidence [is excluded] from being used either at law or in equity for the purpose of contradicting, adding to, subtracting from, or varying the terms of a deed, or controlling its legal operation and effect, *except where it is impeached for fraud, or where it is sought to be reformed upon the allegations of fraud, accident or mistake*."

*See Bladen v. Wells*, 30 Md. 577, 581 (1869) (emphasis added).  Thus, the parol evidence rule recognizes among its exceptions cases when the contract is attacked on grounds of fraud or misrepresentation.  Later Maryland decisions have expressly held in accordance with that interpretation:

> "In summary, the law in Maryland, as enunciated in *Fowler* [*v. Benton,* 229 Md. 571, 583 (1962)] is that a plaintiff can successfully bring a tort action for fraud that is based on false pre-contract promises by the defendant even if (1) the written contract contains an integration clause and even if (2) the pre-contractual promises that constitute the fraud are not mentioned in the written contract.  Most of our sister states apply a similar rule."

*See Greenfield v. Heckenbach*, 144 Md. App. 108, 130 (2002) (citations omitted).  Consequently, count IV is not barred by application of the parol evidence rule.  Sagent did not seek dismissal of count I of the Counterclaim through application of the parol evidence rule.  Count I would survive dismissal for the same reasons as count IV – the parol evidence rule does not preclude an action for fraud based on pre-contractual statements.  *See Greenfield*, *supra*.

Additionally, the same analysis and application of the parol evidence rules applies to claims of negligent misrepresentation.  *See id.* at 138; *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 338 n.7

(1982). Consequently, count II is not barred by application of the parol evidence rule. Further bolstering the point in the case of count II, the Conditional Purchase Order does not have an integration clause. The parol evidence rule only bars extraneous evidence that would vary or contradict the terms of a complete and fully integrated written contract. *See Higgins v. Barnes*, 310 Md. 532 (1987). The Conditional Purchase Order does not purport to be a complete and fully integrated contract, and so Sagent cannot rely on the parol evidence rule to exclude prior or contemporaneous oral statements made in connection with it. *See Johns Hopkins Univ. v. Ritter*, 114 Md. App. 77 at n.4 (1996).

Sagent's reliance on the parol evidence rule with respect to count III is confusing, in that, unlike counts I, II, and IV, count III is not primarily premised on pre-contractual statements made by Sagent personnel. Count III alleges that, after execution of the Joint IP Agreement, Sagent's unwillingness to provide the level of marketing/licensing assistance and the quantity of consulting services that had been contemplated and agreed at the time of the Joint IP Agreement constituted a breach of the covenant of good faith and fair dealing implied in the Joint IP Agreement. As will be discussed further *infra*, the action for a breach of the covenant of good faith and fair dealing requires proof that the breaching party acted in bad faith and in ways that undermined the purpose of the contract. To the extent that evidence of oral statements by Sagent personnel are relevant to proof of that claim, they would be offered not for "contradicting, adding to, subtracting from, or varying the terms of a deed, or controlling its legal operation and effect" but for demonstrating that Sagent acted in bad faith and in ways that undermined the purposes of the contract. The parol evidence rule does not block all evidence of oral statements relating to a contract.

For the foregoing reasons, application of the parol evidence does not warrant dismissal of counts II, III, or IV of the counterclaim.

## II. Maryland Recognizes A Cause Of Action For Breach Of The Covenant Of Good Faith And Fair Dealing, And So Count III Should Not Be Dismissed.

Sagent asserts that Count III of the Counterclaim must be dismissed because Maryland does not recognize a cause of action for breach of a covenant of good faith and fair dealing, and cites cases in support of that assertion. To the contrary, Maryland courts recognize this right.

Maryland law recognizes an implied covenant of good faith and fair dealing in all contracts. *See, e.g., Julian v. Christopher*, 320 Md. 1 (1990); *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521 (1964) ("[I]n every contract there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with the others"); *cf. Suburban Hosp., Inc. v. Dwiggins*, 596 A.2d 1069, 1076-77 (Md. 1991) ("Although we have generally implied a covenant of fair dealing in negotiated contracts, there is no implied covenant of fair dealing with regard to termination by either side in an employment-at-will") (footnote omitted). *See also Elliott v. Board of Trustees*, 104 Md. App. 93, 112, *cert. denied*, 339 Md. 354 (1995); *University of Baltimore v. Iz*, 123 Md. App. 135, 162, *cert. denied*, 351 Md. 663 (1998); *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. Partnership,* 213 F.3d 175, 182 (4th Cir. 2000) (applying Maryland law and denying a motion under Rule 12(b)(6) to dismiss a claim for breach of the implied covenant of good faith and fair dealing).

The distinction on which Sagent attempts to rely, and which has confused some of the later decisions, is that the implied covenant of good faith and fair dealing does not compel a party to take affirmative actions that it is not required to do under the contract; it merely requires a party to undertake its contractual obligations in an appropriate manner. *See, e.g.*, *Parker v. Columbia Bank*, 91 Md. App. 346, *cert. denied*, 327 Md. 524 (1992). The implied duty simply recognizes conditions inherent in express contractual obligations.

> "Thus, if a party promises to pay for its purchase of a business from the profits of a business, inherent in this promise is the agreement that the promisor will exercise reasonable diligence in continuing to conduct the business. *See Automatic Laundry*, [216 Md. at 550-52], 141 A.2d at 501. In the same vein, a promisor who undertakes to distribute products for the promisee impliedly agrees to exercise best efforts, *see Foster-Porter Enterprises v. De Mare*, 198 Md. 20, 81 A.2d 325, 332-33 (Md. 1951), and a promisor who undertakes to exercise judgment on behalf of a promisee impliedly agrees to exercise good judgment, *see Julian*, 575 A.2d at 738-39."

*Eastern Shore Markets*, 213 F.3d at 184.

Consequently, taking the allegations of the counterclaim as true and in the light most favorable to MICROS, as is required in considering a Rule 12 motion to dismiss, *see, e.g.*, *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997); *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969), Sagent failed to undertake the actions required of it by the contract in an appropriate manner, thereby violating its implied promise to refrain from doing anything that will have the effect of injuring or frustrating MICROS's right to receive the fruits of the contract between them. *See Eastern Shore Markets*, 213 F.3d at 185*; Automatic Laundry*, 216 Md. at 552.  As MICROS alleges it was damaged by the breach of that implied promise, in that it was unable to receive the full benefits contemplated by performance of the contract in good faith, MICROS has stated a cause of action recognized under Maryland law for which relief may be granted.  Sagent's Rule 12(b)(6) motion should be denied.

    **III.    Sagent Owed A Duty Of Care To MICROS, And So Count II Should Not Be Dismissed.**

In its motion, Sagent correctly states that an element of a cause of action for negligent misrepresentation is that the speaker owes a duty of care to the party asserting the claim. *See, e.g.*, *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 334-37 (1982).  While there is no "precise formula" for determining the existence of a duty of care between two parties, the Maryland courts consider the nature of the legal relationship between the parties and the likely harm resulting from a party's failure to

exercise reasonable care within that relationship to evaluate whether a duty is owed. *See, e.g.*, *Griesi v. Atlantic General Hospital Corp.*, 360 Md. 1 (2000). When the harms are purely economic, the injury party must demonstrate an "intimate nexus" between itself and the defendant to establish that a duty of care is owed. *See Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 534-35 (1986). The intimate nexus, in turn, is demonstrated by showing contractual privity, or its equivalent, which the Maryland courts have recognized as also occurring in pre-contractual negotiations. *See, e.g.*, *Weisman v. Connors*, 312 Md. 428, 448-51 (1988); *Martens Chevrolet*, 292 Md. at 331-38; *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 338 (1996); *Giant Food v. Ice King*, 74 Md. App. 183, 190-91 (1988).

Sagent does not suggest that the statements at issue in count II did not occur during pre-contractual negotiations; indeed, Sagent's claim assumes that the Conditional Purchase Order was a final binding contract. In any event, the intimate nexus may be found in pre-contractual negotiations regardless of whether a final contract is signed. *See, e.g.*, *Giant Food*, 74 Md. App. at 190-91. Sagent, instead, argues that negotiations between "representatives of commercial business entities" cannot form the basis of a nexus. Maryland law, however, draws no distinction between statements made by or to individuals acting in their individual capacity and statements made by and to only representatives of corporations. *See, e.g.*, *Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741 (1989); *L&P Converters v. Alling & Cory*, 100 Md. App. 563, 570-72 (1994); *Banca del Sempione v. Provident Bank of Maryland*, 75 F.3d 951 (4th Cir. 1996) (applying Maryland law, finding an intimate nexus between Provident and Banca del Sempione under the particular circumstances presented). Each case is evaluated according to the facts and circumstances presented; if the parties have contractual privity or its equivalent, which includes pre-contractual negotiations, an intimate nexus is established and a duty owed, and if the parties do not have contractual privity or its equivalent, then there is no nexus and consequently no duty. *See*

generally *Champion Billiards v. Hall*, 112 Md. App. 560 (1996) ("The question of whether a tort duty will be imposed through application of the *Jacques* principles is very fact specific."). Under Maryland law, the presence or absence of a nexus does not depend on whether the parties are corporations or individuals.

    **IV.**    **<u>Sagent's Statements Suffice As A Basis For An Action In Fraud.</u>**

An action for fraud requires a showing that the defendant made a false statement with actual knowledge of its falsity, or the defendant's reckless indifference as to its truth. *See, e.g.*, *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 703 (1998). The fraud may relate to past facts or present facts, which includes statements of present intent to perform a task in the future. Put another way, a promise as to a matter material to the bargain made by a person with no present intention to fulfill the promise can serve as a basis for an action in fraud. *See, e.g.*, *Gross v. Sussex*, 332 Md. 247, 272 (1993); *Levin v. Singer*, 227 Md. 47 (1961). This principle is especially applicable when the power to perform is solely within the speaker's control. *Id.*

In the counterclaim, MICROS alleged that Sagent made several key promises about matters within its control: that Sagent would work together with MICROS to serve mutual customers, that Sagent would provide complete assistance in identifying end users to whom MICROS could relicense/resell the software, that MICROS could return the licensed software to Sagent for full refund if it were neither used nor resold, and that Sagent would re-sell any licenses that it sold to MICROS if MICROS was unable to do so. All of the foregoing are statements of present intent regarding future action and therefore may be the subject of a fraud action if they are shown to be false and to have been made with the requisite intent.

A Rule 12(b)(6) challenge requires a court to accept all well-pled allegations of the complaint as true and to construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). MICROS also alleges in the counterclaim that the statements were false, that they were made with the requisite intent, and that MICROS justifiably relied on the statements to its detriment – specifically, that MICROS was induced to send the Conditional Purchase Order and incurred damages as a result of Sagent not fulfilling its promises. When considered as a motion to dismiss, then, Sagent's motion regarding count I must be denied, because if the allegations of the counterclaim are taken as true and construed in the light most favorable to MICROS, MICROS would be entitled to relief.

In this portion of its motion, however, Sagent invites the Court to review matters outside the pleadings, thereby submitting its assertion for review under the summary judgment standard of Rule 56. A court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). It is the movant's burden to show the absence of a genuine issue of material fact, *Pulliam Investment Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987), although the non-moving party has some obligation to establish the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). In a motion for summary judgment, the inferences that the court draws from

the facts and evidence presented shall be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587-88; *Pulliam*, 810 F.2d at 1286; *Gill*, 773 F.2d at 595.

Here, the sole matter outside the pleadings that Sagent proffers is an excerpt from the deposition testimony of Scott Callnin, a MICROS employee who was involved in the discussions that led to the Conditional Purchase Order. In response to a deposition question about whether the topic of returning the subject software to Sagent was discussed during the June 6, 2000, meeting, Mr. Callnin answered as indicated in Sagent's motion. Sagent then interprets Mr. Callnin's answer as characterizing one of the alleged fraudulent statements (about the right to return the software) as being merely anticipatory. Sagent provides no evidence of the absence of genuine disputes of material fact as to the other statements alleged by MICROS in its counterclaim.

Sagent ignores, however, other portions of Mr. Callnin's testimony relevant to this issue, as well as the deposition testimony of others who attended the relevant meetings, which may demonstrate that the alleged statements were actually made, and at least indicates a genuine dispute of material fact about the statements.

> "Q.   Do you recall any discussion at that June 6th, 2000, meeting about the notion that Sagent and MICROS would work together to service mutual customers?
>
> A.   I think that was the understanding before the meeting – going into the meeting. Perhaps reiterated, but that was not anything new during the meeting.
>
> Q.   Do you have a specific recollection of it being reiterated at the meeting?
>
> A.   Yes. Uh-huh."

Callnin Dep. at 74-75.

> "Q.   Did anyone from Sagent at that meeting say that MICROS could return the software and the analytical calculator to Sagent if MICROS couldn't resell or relicense it for a full refund?

9

  A. I don't think that was said in exactly that manner.  It was more in – I might not have the exact quote, but 'We'll help you get rid of it.'

  Q. Who said that?

  A. Would have been Gene [*Garrett, Sagent's Vice President of Sales for the Southeast Region at that time*].

  Q. And what was your understanding of what he meant by that statement? …

  A. That they would help us find clients either – first and foremost clients for Insight product who would buy this product, and thus the software, or even barring perhaps an Insight client, that they would be able to identify someone who may just want to buy the software from as an OEM even perhaps outside the context of Insight."

Callnin Dep. at 76-77.

  "Q. Did they get more specific in terms of how they would work with you?

  A. That they would resell it.  They talked a large quantity, and that they would refund if necessary.  But they clearly preferred to resell it or work through the channel.  But they expressed their desire, interest, and intent to help us find customers to tell them through.

  Q. Who said those statements?

  A. Gene Garrett, Dan VanVeelen also, as well as Mr. DeGennaro.

  Q. Let me make sure I understand.  All three of these individuals at some point during the June 6th 2000 meeting indicated to you that if MICROS could not resell or otherwise use the licenses that were contemplated in this transaction, that they could be returned to Sagent for a full refund and that Sagent would try to resell the licenses?

  A. That's correct."

Rogers Dep. at 13-14.

Thus, viewing the facts in the light most favorable to MICROS, Sagent representatives made each of the statements that MICROS alleges were made, and the statements were statements of present intention in respect of future events within Sagent's control.  They were not merely anticipatory, and so

may be the subject of a fraud claim. For this reason, Sagent's motion for summary judgment on count I should be denied.

Sagent further argues that count I should be dismissed because, it alleges, there is no evidence that the statements were made with the requisite intent. Intent is generally a matter reserved for the trier of fact, and not a proper subject for summary judgment. *See, e.g.*, *DiGrazia v. County Executive of Montgomery Cty.*, 288 Md. 437 (1980); *Sterry v. Bethlehem Steel*, 64 Md. App. 175, *cert. granted*, 304 Md. 362 (1985). Also, Sagent has not even alleged the absence of a dispute of material fact on the issue of intent. MICROS has contended, in its counterclaim, that the statements were made with the requisite intent. The evidence adduced to date, when considered in the light most favorable to MICROS, supports that assertion.

> "A.    … He was quite concerned about his quarter – his standing at the company. They had missed numbers i.e. financial results. It was a lot of pressure, and we had met prior – a month ago and developed a pretty good rapport … . We are partners. We need to make numbers. If we don't make numbers, may not be here. That was on June 6th.
>
> Q.    That was Mr. Garrett on June 6th?
>
> A.    Mr. Garrett. … "

Rogers Dep. at 12-13.

> "Q.    As a shareholder of Sagent, I presume you've followed the stock price of the company over the years?
>
> A.    Of course.
>
> Q.    And as the company's fortunes have waxed and waned, the stock price has comparably waxed and waned.
>
> A.    Correct.

11

Q. In fact it hit what seems to be an all time high in the mid forties in January or March of 2000, that time period?

A. The number sounds right. The time period I wouldn't be able to tell.

Q. By the end of 2000 it was less than five dollars a share?

A. Again – I presume that you're correct."

VanVeelen Dep. at 14.

"Q. Why was it helpful for Sagent to have Gene actively involved in the transaction?

A. Because based on the sales forecast and based on what we had been told, this would be a very large transaction.

Q. Define very large.

A. Anything larger than a half a million dollars.

Q. Did the status have any particular importance in the May 2000 timeframe?

A. It always has. Not just that timeframe. A transaction that size is significant to our company regardless of timeframe."

VanVeelen Dep. at 40-41.

Construed in the light most favorable to MICROS, the statements establish that Sagent's business was not doing well during calendar 2000, that Sagent was desperate for a sale, and that the proposed transaction was very large. A fair and reasonable inference to be drawn is that a large transaction during a declining year would have a positive effect on the company's stock price and the standing of the individuals involved with the transaction. If, as MICROS has alleged, Sagent personnel made the indicated statements of present intention with knowledge that they did not intend to fulfill them later, and did so intending that MICROS rely on the statements and enter into the Conditional Purchase Order, as a result of which MICROS suffered damages, then MICROS has stated a viable

claim for fraud. At the very least, there is sufficient evidence in the record to demonstrate a genuine dispute of material fact, thereby precluding entry of summary judgment.

### V.  The Counterclaim should not be dismissed for improper venue.

Sagent argues that counts II, III, and IV of the Counterclaim should be dismissed for improper venue, alleging that each of the indicated three counts relates to the Joint IP Agreement, which contains a forum selection clause requiring actions relating to that contract be brought in Santa Clara County, California. Sagent does not so contend with respect to count I, which indisputably does not relate to the Joint IP Agreement.

Count II also does not relate to the Joint IP Agreement, however. In count II, MICROS alleges that the statements made by Sagent in anticipation of the Conditional Purchase Order constituted negligent misrepresentations (as a pleading in the alternative to count I). Whatever effect the forum selection clause in the Joint IP Agreement might have on counts III and IV, both of which do relate to the Joint IP Agreement, it has none on claims that are not related to the Joint IP Agreement. Consequently, the forum selection clause in the Joint IP Agreement provides no basis for count II to be dismissed for improper venue.

To preserve a Rule 12(b)(3) challenge, the claim of improper venue must be made either in the answer or in a pre-answer motion to dismiss. In this action, Sagent chose the former course, asserting improper venue as an affirmative defense in its Answer to the Counterclaim. While, ordinarily, that reference would be sufficient to comply with the requirements of Rule 12(b), venue is a defense that can be waived by subsequent conduct even if timely raised in the answer. Numerous cases have held that when a party intentionally avails itself of the particular forum or engages in other conduct inconsistent with improper venue, it waives its defense of improper venue. *See, e.g.*, *Manchester Knitted Fashions,*

*Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 692 (1st Cir. 1992) (defendant entered a stipulation regarding discovery, moved to permit out-of-state attorneys to appear pro hac vice, and requested a hearing on plaintiff's motions); *Krape v. PDK Labs Inc.*, 193 F.R.D. 82 (S.D.N.Y. 1999) (defendant filed motions premised in part on New York being a proper forum and so waived the defense of improper venue in New York); *Marquest Medical Prods. v. EMDE*, 496 F. Supp. 1242 (D. Colo. 1980) (defendant participated in discovery and jointed a stipulation); *Textron v. Maloney-Crawford Tank & Mfg.*, 252 F. Supp. 362 (D. Tex. 1966) (defendant pursued affirmative relief).

Here, Sagent moved to permit its California attorney to appear pro hac vice, a request that this Court granted. Sagent has filed a motion in limine seeking affirmative relief from this Court. Sagent has engaged in extensive discovery, including with relation to the Joint IP Agreement – Sagent requested and received documents and Sagent deposed two MICROS employees about the Joint IP Agreement. *See, e.g.*, Callnin Dep. at 87-88; Rogers Dep. at 61-62. Sagent was in no way prohibited from seeking discovery pertaining to the portions of MICROS's counterclaim premised on the Joint IP Agreement. Additionally, the instant motion is made after the close of discovery in this matter, and over 6 months after the counterclaim was filed. On the foregoing basis, this Court may find that Sagent's pretrial conduct and purposeful availment of the Maryland forum waives its previously raised defense of improper venue.

### VI.    To the extent Sagent's motion seeks relief under Rule 12(b)(1), it must be denied.

In its motion, Sagent asserts that it is bringing the motion under, alternatively, Rules 12(b)(1), 12(b)(3), 12(b)(6), and/or 56. Rule 56 applies to the extent that Sagent has invited this Court to consider matters outside the pleadings. Sagent's memorandum of law in support of its motion contains

arguments clearly based on Rules 12(b)(3) and 12(b)(6).  Nowhere, however, does there appear to be a single argument based on Rule 12(b)(1).  Nor would there be any basis for dismissal under that Rule – it is not seriously disputed that the parties are diverse (Sagent is a Delaware corporation with its principal place of business in California, MICROS is a Maryland corporation with its principal place of business in Maryland) nor is it seriously disputed that the amount in controversy exceeds $75,000.00.  Therefore, to the extent that Sagent's motion is deemed to be based, in part, on Rule 12(b)(1), it should be denied, as no argument was advanced under that Rule nor does there appear to be any basis for an argument under that Rule.

Respectfully submitted


*Michael H. Tow*
Michael H. Tow, Bar No. 12042
 MICROS Systems, Inc.
 7031 Columbia Gateway Drive
 Columbia, MD 21046-2289
 (443) 285-8052 (tel)
 (443) 285-0466 (fax)

Counsel for MICROS Systems, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2003, a copy of the foregoing Defendant's Opposition to Plaintiff's Motion to Dismiss was filed and served electronically on all counsel of record.

*Michael H. Tow*
Michael H. Tow

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**SAGENT TECHNOLOGY, INC.**         *

   **Plaintiff**                               *

   **v.**                                          *     Case No. JFM-02-2505

**MICROS SYSTEMS, INC.**              *

   **Defendant**                           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

Upon consideration of Plaintiff's Motion to Dismiss Counterclaim or Alternatively for Summary Judgment, Defendant's Opposition to the Motion to Dismiss, any oral argument thereon, and any further briefing thereon, and the grounds of the Defendant's Opposition being well-taken, it is this ___ day of _____, 2003,

**ORDERED**, that Plaintiff's Motion to Dismiss Counterclaim or Alternatively for Summary Judgment be and it hereby is **DENIED**.

_____
Judge, United States District Court for the
District of Maryland