IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAGENT TECHNOLOGY, INC. *

  Plaintiff *

  v. *  Case No. JFM-02-2505

MICROS SYSTEMS, INC. *

  Defendant *

 * * * * * * * * * * *

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION IN LIMINE TO EXCLUDE PAROL EVIDENCE

MICROS Systems, Inc. ("MICROS"), by counsel, files this Opposition to the Motion in Limine

filed by Sagent Technology, Inc. ("Sagent").

As an initial response, the motion is premature. No trial date has yet been set in this matter, and

both parties have or shortly will be filing motions for summary judgment. To the extent that either

party's dispositive motions are granted, the motion in limine could be moot. Accordingly, this Court

should defer decision on the motion in limine until after the dispositive motions have been resolved,

assuming that the case and the issues presented in the motion are still viable at that point.

Should this Court prefer to decide the motion now, however, MICROS presents the following

points in opposition. In its motion in limine, Sagent makes the following arguments:

(1) Article 2 of Maryland's Uniform Commercial Code ("U.C.C."), codified at Md. Code

Ann., Com. Law I § 2-101 *et seq.*, applies to the transaction embodied in the alleged contract documents

exchanged in June 2000 (the "Conditional Purchase Order");

(2)      Section 2-202 of the U.C.C. prohibits this Court's consideration of Sagent's oral

statements made before the Conditional Purchase Order, upon which MICROS relied;

(3)      Sections 2-201 and 2-209(3) of the U.C.C. apply to the Conditional Purchase Order and

prohibit oral statements about subsequent modifications to the Conditional Purchase Order.

For the reasons stated below, article 2 of the U.C.C. does not apply to the Conditional Purchase

Order, and so Sagent's arguments on the use of parol evidence and the application of the statute of

frauds must be analyzed under the common law of contracts.  Upon doing so, it will be clear that the

motion in limine should be denied, as the disputed evidence is admissible under the various common

law doctrines.  Moreover, even if article 2 applied, the disputed evidence would be admissible.

1.      **Article 2 Of The U.C.C. Does Not Apply To Software Licenses.**

Article 2 applies only to "sales" of "goods."  *See* Md. Com. Law I Code Ann. § 2-102 ("Unless

the context otherwise requires, this title applies to transactions in goods; it does not apply to any

transaction which although in the form of an unconditional contract to sell or present sale is intended to

operate only as a security transaction nor does this title impair or repeal any statute regulating sales to

consumers, farmers or other specified classes of buyers."); *see also Bona v. Graefe*, 264 Md. 69, 73

(1972) (holding that article 2 does not apply to a bailment because the express wording of article 2 limits

its application to sales); *Singer v. Baltimore Gas & Elec. Co.*, 79 Md. App. 461 (1989) (holding

electricity is not a "good" within the meaning of article 2 and holding that article 2, consequently, did

not apply).  Sagent's motion is premised on two assumptions: (1) software constitutes "goods" within

the meaning of section 2-105 of the U.C.C., and (2) the transactions memorialized in the Conditional

Purchase Order were a "sale" within the meaning of section 2-106 of the U.C.C.  Sagent concludes from

these premises that article 2 applies to the Conditional Purchase Order.  To date, however, no Maryland

court has ever held that software constitutes "goods" within the meaning of the U.C.C., and, if presented

with the question, no Maryland court would so hold.  Additionally, the transactions embodied in the

Conditional Purchase Order were not sales.  Consequently, article 2 does not apply.

A.     *Software is not "goods"*

"Goods" are defined in the U.C.C. as "all things (including specially manufactured goods) which

are movable at the time of identification to the contract for sale other than the money in which the price

is to be paid, investment securities (Title 8) and things in action."  Md. Com. Law I Code Ann. § 2-

105(1).  Intellectual property and other intangibles historically were not treated as goods for article 2

purposes, even if capable of being recorded or referenced in tangible form.  *See generally U.S. Test, Inc.*

*v. NDE Envt'l Corp.*, 196 F.3d 1376 (Fed. Cir. 1999) (holding patents are not "goods"); *Grappo v.*

*Alitalia Linee Aeree Italiane, S.P.A.,* 56 F.3d 427, 430 (2d Cir. 1995) (stating that the contract was not a

good but a sale of a general intangible because the contract was for the sale of a non-exclusive license

for copyrighted material); *Fink v. DeClassis*, 745 F. Supp. 509 (N.D. Ill. 1990) (holding tradenames,

trademarks, logos, advertising, artwork, customer lists, sales records, unfulfilled sales orders, goodwill,

and licensing agreements are not "goods"); *Smith Office Serv., Inc. v. Kelley*, 762 P.2d 791 (Colo. App.

1988) (holding right to use office space, right to use telephone equipment, and customer list were not

"goods"); *cf. Winter v. G.P. Putnam's Sons,* 938 F.2d 1033 (9th Cir. 1991) (analogizing computer

software to aeronautical charts that are pure thought and expression); *United States v. Brown,* 925 F.2d

1301, 1306-07 (10th Cir.1991) (holding stolen software on a computer disk is not the type of property

contemplated within the language of 18 U.S.C. § 2314 'goods, wares or merchandise'); *but see, e.g.*,

*i.LAN Sys., Inc. v. NetScout Serv. Level Corp.*, 183 F. Supp. 2d 328, 332 (D. Mass. 2002) (stating, in the

context of a dispute between business parties, that 'Article 2 technically does not, and certainly will not

3

in the future, govern software licenses, but for the time being, the Court will assume that it does'). Article 2 of the U.C.C. was drafted over 60 years ago, and was intended to apply largely to tangible goods, but software is fundamentally different from tangible goods in several important ways. Once created, software can be duplicated from a master copy virtually without limitation or marginal cost, except for the nominal cost of additional media when the use of physical media is necessary. Moreover, once installed at the licensee's site, the software is ordinarily separated from the media upon which the software was delivered and the media may never be used again – in that respect, the media is little more than a vehicle for delivery of the software. Further, since, increasingly, software is delivered over the Internet without the necessity of physical media, if the software in this case were classified as "goods" on the basis that it was delivered on a CD-ROM, it would lead to the anomalous result of software on disks being "goods" but software downloaded directly not being "goods," there being no physical manifestation in the latter case. The value of the transaction is ordinarily in the software, not in the media on which it is delivered. For these reasons, software does not fit the definition of "goods" in Section 2-105.

> B.    *A software license is not a "sale."*

Under the U.C.C., a "sale" occurs when title to goods passes from the seller to the buyer for an agreed price. *Id.* § 2-106(1); *see also id.* § 2-312 (subject to certain limitations, a contract of sale contains an implied warranty that the buyer will receive good title to the goods, free and clear of liens and encumbrances).

By contrast, software provided under a license is an intangible and title does not pass to the licensee under a license agreement. *See generally In re Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d 702, 709 (D. Md. 2001) (consumers who acquire licenses to Microsoft software are not direct purchasers

of goods for antitrust purposes); *Davidson v. Microsoft Corp.*, 143 Md. App. 43 (2002) (holding

similarly).  A buyer of goods generally owns what it buys and generally has exclusive rights in the item

purchased.  Under a software license agreement, the licensee instead receives limited permission to use a

copy of the licensor's intellectual property; the specific rights and the scope of the rights granted depend

on the terms of the license agreement.  *See, e.g.*, *Advanced Computer Servs. of Mich. v. MAI Sys. Corp.*,

845 F. Supp. 356, 367 (E.D. Va. 1994) ("MAI customers are not 'owners' of the copyrighted software;

they possess only the limited rights set forth in their licensing agreements").  The licensor (unless the

license provides otherwise) typically retains the power to use the software or to provide it to others, as

well as to further develop and use it; the owner of a licensed copy rarely obtains all rights associated

with the original intellectual property.  *See generally DSC Communications Corp. v. Pulse*

*Communications, Inc.*, 170 F.3d 1354 (Fed. Cir. 1999), *cert. denied*, 528 U.S. 923 (1999); *S.O.S., Inc. v.*

*Payday, Inc.*, 886 F.2d 1084 (9th Cir. 1989).  For these reasons, a software license would not be

considered a "sale" under Section 2-106.

C.   *The Maryland Legislature has implicitly determined that article 2 does not cover*
     *software licenses.*

The enactment in 2000 (effective date, October 1, 2000) of the Uniform Computer Information

Transactions Act ("UCITA"), codified at Md. Com. Law II Code Ann. § 22-101 *et seq.*, bolsters

MICROS's view that, if presented with the question, a Maryland court would hold that article 2 of the

U.C.C. does not cover software licenses.[1]  Recognizing that 'a body of law based on images of the sale

---

[1] The Conditional Purchase Order was sent and dated June 30, 2000.  UCITA was signed in April 2000 and took effect on October 1, 2000.  As a statute affecting substantive rights, it applies prospectively only.  *See, e.g., Keeney v. Allstate Ins. Co.*, 130 Md. App. 396 (2000) ("The general presumption is that all statutes, State and federal, are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary. Retroact[ivity], even where permissible, is not favored and is not found, except upon the plainest mandate in the act.") (quoting and citing *State Farm Mut. Auto. Ins. Co. v. Hearn*, 242 Md. 575, 582 (1966); *Bell v. State*, 236 Md. 356, 369

of manufactured goods ill fits licenses and other transactions in computer information,' the National

Conference of Commissioners on Uniform State Laws promulgated UCITA, a code resembling UCC

Article 2 in many respects, but drafted for the express purpose of creating a statutory scheme for

regulating software licenses.  *Specht v Netscape Communications Corp*., 306 F.3rd 17 at note 13 (2d Cir.

2002).  UCITA was originally intended as a new Article 2B to supplement Articles 2 and 2A (leases) of

the UCC, but was later proposed as an independent code.  To date, only Maryland and Virginia have

adopted versions of UCITA.  Implicit in that enactment, however, is the Maryland legislature's

determination that article 2 of the UCC does not address software licenses (else why enact UCITA?), a

determination by which the Maryland courts would be bound.

        D.    *Conclusion*

       In this matter, the Conditional Purchase Order (attached as Exhibit A to Sagent's motion in

limine) contemplated the license of Sagent software; although the document contains text referencing

the "purchase of the specified Sagent products," neither party seriously contends that Sagent intended to

provide anything other than a license to MICROS.  *See also* Van Veelen Dep. at 82 ("Q.  Better

question.  The June 30 document – document discussed providing a license to Micros for certain

software? A.  Yes).  There is no indication in the document or elsewhere that title was to pass at any

time to anything except perhaps the CD-ROM on which the software resided, which was the only

physical item delivered from Sagent to MICROS.  *See* Van Veelen Dep. at 82-83.  The order does not

assign a cost to the media, and the Court may take judicial notice that a single CD-ROM would

ordinarily be sold for only a nominal purchase price.

---

(1964).  There is nothing in UCITA that indicates that the legislature intended it to apply retroactively.  Its application to this case, therefore, is limited to providing additional evidence that, at least in Maryland, article 2 of the U.C.C. does not apply to software licenses.

For all of the foregoing reasons, and particularly in light of the enactment of UCITA, a Maryland court would not apply article 2 of the U.C.C. to a software license, including the alleged license at issue in this case, and so Sagent's arguments on the interpretation, application, and effect of various provisions of article 2 do not apply to the transactions at issue. Because UCITA would not apply either, this Court (and a Maryland state court faced with the same matter) should apply the common law of contracts to Sagent's motion. Upon doing so, this Court should deny the motion. Evidence of pre-contractual statements in cases where the contract is challenged on the ground of fraud or negligent misrepresentation is admissible even if the contract contains an integration clause (which the Conditional Purchase Order does not) and even if the pre-contractual promises are not mentioned in the written contract. *See, e.g.*, *Greenfield v. Heckenbach*, 144 Md. App. 108 (2002). Moreover, as will be discussed *infra*, it is clear from a review of the document that is not intended as the final integrated agreement of the parties, even apart from the pre-contractual statements made by Sagent personnel. It is unclear what modifications to the Conditional Purchase Order Sagent is complaining of in the portion of its motion addressing the application of the statute of frauds – but none of Maryland's statutes of frauds would bar evidence thereof, as the instant document is not a contract for the sale of personal property, Md. Com. Law I Code Ann. § 1-206(1), nor is it a contract reflecting the transfer of an interest in real property, Md. Real Prop. Code Ann. § 5-104, nor is it within the types of contracts required by Md. Cts. & Jud. Proc. Code Ann. § 5-901 to be in writing.

2.    **Even under Article 2, the Motion in Limine Should be Denied.**

As previously indicated, MICROS does not agree with Sagent that article 2 of the U.C.C. applies to the Conditional Purchase Order, such that sections 2-202, 2-201, or 2-209 of the U.C.C. have any bearing on the admissibility of evidence in this matter. However, to the extent that this Court disagrees,

MICROS will respond to Sagent's motion as if, for the sake of argument only, article 2 does apply to the Conditional Purchase Order.

Section 2-202 of the U.C.C. states:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) By course of dealing or usage of trade (§ 1-205) or by course of performance (§ 2-208); and

(b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Md. Com. Law I Code Ann. § 2-202.

As noted in the official comments, section 2-202 "definitely rejects … any assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon." *Id.* cmt. 1; *see generally United States ex rel. Federal Corp. v. Commercial Mechanical Contractors*, 707 F.2d 1124 (10th Cir. 1982) (holding that the fact that part of an agreement is in writing does not automatically mean that the writing is intended to state the entire agreement).

Thus, under Section 2-202, parol evidence of prior or contemporaneous agreements is admissible in at least the following cases:

(1) if the parol evidence contradicts express provisions of a document, it is admissible only if the parties did not intend the writing to be a final expression of their agreement with respect to the terms that were included therein; and

(2) if the parol evidence supplements without contradicting express provisions of a document, it is admissible only if the parties did not intend the writing to be a complete and exclusive statement of the terms of the agreement.

In applying Section 2-202, therefore, the court must first determine whether the parties' writings were intended to, and do, constitute a complete integration of the parties' agreement, and the court may look to extrinsic evidence in making that determination. *See, e.g.*, *Walley v. Bay Petroleum Corp.,* 312 F.2d 540, 544 (5th Cir. 1963); *see also Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc.,* 890 F.2d 108 (9th Cir. 1989); *Amoco Prod. Co. v. Western Slope Gas Co*, 754 F.2d 303 (10th Cir. 1985); *Herman Oil, Inc. v. Peterman*, 518 N.W.2d 184 (N.D. 1994). If the terms of the written agreement are not intended to be the complete and exclusive statement of the parties' agreement, parol evidence may be used to bring the entire contract before the court.

Additionally, it is clear that the U.C.C. does not supersede the common law of fraud and misrepresentation. *See, e.g.*, Md. Com. Law I Code Ann. § 1-103. This becomes important insofar as the law on fraud and misrepresentation creates an exception to the parol evidence rule – permitting evidence of prior or contemporaneous statements when the contract is attacked on the grounds of fraud or misrepresentation. *E.g.*, *Greenfield*, 144 Md. App. at 130, 138.

In this case, there is evidence both within and outside the Conditional Purchase Order that makes it sufficiently clear that the document was not "intended by the parties as a final expression of their agreement with respect to such terms as are included therein" or as a "complete and exclusive statement of the terms of the agreement." Consequently, evidence of prior or contemporaneous oral agreements is admissible even under Section 2-202.

Initially, the Conditional Purchase Order does not contain integration or merger language. While an integration clause is not in itself dispositive on the question whether the document is intended as a final and integrated agreement, *see Pumphrey v. Kehoe*, 261 Md. 496 (1971); *Shoreham Developers v. Randolph Hills*, 248 Md. 267 (1967); *see also ARB Inc. v. E-Systems*, 663 F.2d 189, 199 (D.D.C. 1980) (applying Maryland law; analyzing the length, detail, and time spent in negotiating the terms of the contract in evaluating the effect of the presence or absence of an integration clause), its absence lends credence to a claim that the document was not intended as a conclusive expression of the parties' agreement.

The second page of the Conditional Purchase Order states that it is subject to "Annual Maintenance & Support terms and conditions, see attached Support Agreement." *See* Exhibit A to Sagent's Motion in Limine at 2. It is undisputed that no such document is attached, and Sagent has no explanation for its absence. *See* Van Veelen Dep. at 71-72. The quote on the second page also contains unexplained mathematical ambiguities – the extended total for the "Sagent DataMart Solution" is $150,000, and the extended total for the "Analytical Calculator" is $10,000, and yet the subtotal for software indicated on the quote is only $112,000. Sagent's sole explanation is that this may have been an error. Van Veelen Dep. at 70-71. Sagent has also testified that the "Exhibit A" attached to the Conditional Purchase Order as its second page ordinarily would be part of an end-user software license agreement, which was not included with the Conditional Purchase Order and which would set forth the customary terms associated with an end-user software license. *Id.* at 74-75. No license agreement was exchanged as part of the disputed transaction, and it is not clear what Sagent intended the applicable licensing terms to be, which ordinarily is an important matter for a software licensor.

10

Additionally, as described in MICROS's Opposition to Sagent's Motion to Dismiss, MICROS and Sagent had reached certain agreements upon which MICROS relied in transmitting the Conditional Purchase Order. Specifically, these included statements made at a June 6, 2000, meeting that Sagent and MICROS would work together to service mutual customers, that Sagent would help MICROS find clients either for the MICROS product that interacted with the Sagent products listed in the Conditional Purchase Order or simply for the Sagent products, and that Sagent would accept return of the product for a full refund and that Sagent would try to resell the licenses if MICROS was unable to do so. The absence of these agreements indicates the documents' incompleteness.

In its motion, Sagent relies on the Court of Special Appeals' decision in *Snyder v. Greenbaum & Assocs.*, *Inc.*, 38 Md. App. 144 (1977) to argue that the foregoing statements contradict express terms of the Conditional Purchase Order, and that the matters described in the foregoing statements are sufficiently important that they should have been included in the written document. Sagent has misapplied the holding of *Snyder* to this case, and it does not warrant the result argued for by Sagent.

In the first place, *Snyder* reaffirms that misrepresentations made by one party before the entry into a contract by the other party may render the contract voidable, and so evidence of the statements constituting misrepresentations is admissible notwithstanding Section 2-202. *See Snyder*, 38 Md. App. at 148 ("It is axiomatic that misrepresentations by one party made prior to the contracting between the parties, may render the contract voidable by the other party to the contract"). In *Snyder*, the court determined that the statements at issue were not material misrepresentations. Here, however, the statements were material misrepresentations, and so they may be admitted under the fraud/misrepresentation exception to the parol evidence rule.

11

Secondly, the *Snyder* court observed that the contract at issue there had been made "after negotiations between the parties" and, on the circumstances there presented, was "intended to be a final expression of their agreement with respect to the terms embodied therein." *Id*. at 149.  The *Snyder* opinion offers little explanation on how the court reached the latter conclusion, and provides little detail on the negotiations.  Nevertheless, it is MICROS's contention that the instant document was not intended to be a final expression of the parties' agreement with respect to its terms, for the reasons stated above.  Additionally, the record is devoid of evidence of extensive negotiations of the terms of the Conditional Purchase Order – to the contrary, it appears that Sagent transmitted the document forms on or about June 20, 2000, about 10 days before MICROS returned them to Sagent.  *See* Van Veelen Dep. at 69 *and* Rogers Dep. at 19-20.   There is no indication of any discussions between the parties about their contents between June 20, 2000, and June 30, 2000, the date on which MICROS returned the documents to Sagent.  Absent a finding that the agreement was intended as a final and exclusive statement of the parties' agreement, parol evidence is admissible to contradict express terms of the agreement or to provide consistent additional terms.

Finally, Sagent argues that the various rights it promised to MICROS before entry into the Conditional Purchase Order (e.g., rights of refund and return, and resale assistance), are sufficiently "important" as to be analogous to the right of unilateral rescission that the *Snyder* court held was important and, consequently, a term that would have been included in the parties' written agreement had it been actually agreed upon.  Sagent argues, in reliance on that analogy, that just as the *Snyder* court excluded evidence of this "important" clause, so, too, this Court should exclude evidence of the important rights at issue here.  The *Snyder* court deemed the unilateral rescission right sufficiently important to the contract, however, because of the substantial preparatory steps that the other party had

to take before performance, including purchase of the carpet. *Id.* at 151-52. Consequently, the court reasoned, a rational businessman would have included conditions on any right of rescission, to reflect that he had incurred actual costs in preparation that would not have been readily avoidable or recoverable if the other party exercised a unilateral rescission right. *Id.* The record in this case, however, is devoid of any indication of any preparatory steps that Sagent had to take or would have had to take before performing the contract. Indeed, the testimony indicates that upon receipt of the Conditional Purchase Order on June 30, 2000, Sagent's local representative immediately faxed it to Sagent's headquarters in California, whereupon the package was immediately shipped, so that Sagent could take the revenue in the calendar quarter ending June 30. Van Veelen Dep. at 76-77 and 82-83. Sagent's conduct indicates the complete absence of preparatory steps, or any other costs or concerns that a rational businessman would have needed to address in a complete and conclusive written agreement in respect of refund rights and the other matters described in Sagent's pre-contractual statements. Consequently, the *Snyder* rationale does not apply, notwithstanding the importance of the contractual rights at issue here.

Finally, Sagent asserts that it is "very telling" that no representative of MICROS confirmed in writing the important concessions that Sagent made. *See* Sagent Motion in Limine at 8. The record belies that assertion. *See* Van Veelen Dep. at 77-78 and 81, and Exhibits 9 and 10 to the Van Veelen Deposition. Indeed, what is perhaps more telling is that, despite being reminded of these understandings on several occasions, Sagent never in writing advised MICROS personnel that their recollections were incorrect. *Id.* at 78 ("Q. Did you ever advise Mr. Callnin that that was not your recollection, not your understanding of the arrangement? A. Not that I recall.")

13

In conclusion, application of section 2-202 does not yield a different result than would application of the common law of contracts in this matter. The parol evidence about which Sagent complains would be admissible, for the reasons described above.[2]

3.  **Sections 2-201 and 2-209 have no application to the matters at issue.**

Pursuant to sections 2-201 and 2-209 of the U.C.C., contracts for the sale of goods in excess of $500 must be in writing, and modifications to contracts that are subject to the "in writing" rule must also be in writing, in each case subject to some limited exceptions. Md. Com. Law I Code Ann. §§ 2-201 and 2-209. As noted above, MICROS disputes that article 2 applies to the Conditional Purchase Order, but is assuming that it does for the sake of argument in this portion of its Opposition. Sagent argues that its pre-contractual oral statements constitute modifications to the contract between the parties, that the modifications were not in writing, and are therefore unenforceable. As presented, the argument goes to the enforceability of the pre-contractual statements, not their admissibility. The argument thus would more properly have been presented in the context of a motion for summary judgment.

Nevertheless, the point fails on other grounds. Logically, modifications to a contract can only occur after the contract is formed – otherwise, there is no contract to modify. The statements at issue occurred before the date of the Conditional Purchase Order. Assuming that the Conditional Purchase Order is a contract, then, as prior or contemporaneous agreements, the admissibility of the pre-contractual statements is governed by the parol evidence rule, not the statute of frauds as it pertains to contract modifications. *Cf. Herman Oil, Inc. v. Peterman*, 518 N.W.2d 184 (N.D. 1994) (distinguishing

---

[2] Sagent also raises a straw man argument about the use of parol evidence under a "course of dealing" theory. While MICROS and Sagent did have a history of contractual and other dealings before June 30, 2000, it is not MICROS's contention that the pre-contractual statements arise out of a course of dealing between the parties, at least not in the sense contemplated by comment 2 to section 2-202. The pre-contractual statements upon which MICROS relied were fraudulent, and in any event do not contradict the express terms of a writing that the parties intended to be the final and exclusive statement of their agreement. For that reason, evidence of the statements is admissible.

between parol evidence of pre-contractual statements and evidence of post-contractual conduct that arguably constituted a modification of the contract). While there are matters subsequent to the Conditional Purchase Order that bear on what the parties' agreement was, e.g., Sagent's repeated attempts to modify the invoice and product mix in an attempt to convince MICROS to transform the Conditional Purchase Order into an unconditional and binding agreement, Sagent is not complaining about that evidence in its motion in limine.

In sum, Sagent's motion in limine, which is addressed to statements that occurred before the Conditional Purchase Order, must be denied to the extent presented under sections 2-201 and 2-209 of the U.C.C., because, by their terms, they apply only to post-contractual modifications, not pre-contractual agreements.

4.    **Conclusion**.

For the foregoing reasons, article 2 of the U.C.C. does not apply to the Conditional Purchase Order. Regardless of whether it does, however, the disputed statements are admissible, and so Sagent's Motion in Limine should be denied.

*Michael H. Tow*_____
Michael H. Tow, Bar No. 12042
 MICROS Systems, Inc.
 7031 Columbia Gateway Drive
 Columbia, MD 21046-2289
 (443) 285-8052 (tel)
 (443) 285-0466 (fax)

Counsel for MICROS Systems, Inc.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April, 2003, a copy of the foregoing Defendant's

Opposition to Plaintiff's Motion to Dismiss was filed and served electronically on: Scott H. Phillips,

Esq., Semmes Bowen & Semmes, 250 W. Pratt Street, Baltimore, MD 21201, and was mailed via first

class mail, postage prepaid, to:  Adron W. Beene, Esq., Law Offices of Adron W. Beene, 6472 Camden

Ave, Ste 204, San Jose, CA 95120.


*Michael H. Tow*_____

Michael H. Tow, Bar No. 12042
  MICROS Systems, Inc.
  7031 Columbia Gateway Drive
  Columbia, MD 21046-2289
  (443) 285-8052 (tel)
  (443) 285-0466 (fax)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SAGENT TECHNOLOGY, INC.** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Case No. JFM-02-2505** |
| **MICROS SYSTEMS, INC.** | * | |
| **Defendant** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion in Limine, Defendant's Opposition thereto, any further briefing thereon, any oral argument thereon, and the grounds of the Defendant's Opposition being well-taken, it is this ___ day of _____, 2003,

**ORDERED**, that Plaintiff's Motion in Limine be and it hereby is **DENIED**.

_____
Judge, United States District Court for the
District of Maryland