IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAGENT TECHNOLOGY, INC. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JFM-02-2505 |
| MICROS SYSTEMS, INC., et al | * | |
| Defendants | * | |

* * * * * * * * * * *

**SAGENT TECHNOLOGY, INC.'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Sagent Technology, Inc. ("Sagent"), Plaintiff, by and through undersigned counsel, hereby replies to Micros Systems, Inc.'s ("Micros") Opposition to Sagent's Motion to Dismiss Counterclaim, Or, Alternatively, for Summary Judgment ("Opposition").

A. Maryland Law Does Not Recognize a Cause of Action for an Alleged Breach of a Covenant of Good Faith and Fair Dealing; Even If Such a Cause of Action Were Recognized Under Maryland Law, Count III of the Counterclaim Should Be Dismissed Because Micros Has Not Alleged That Sagent's Alleged Breach of That Covenant Prevented Micros From Performing Its Obligations Under the JIPA.

Micros contends that Count III of its Counterclaim should not be dismissed because Maryland recognizes a cause of action for breach of a covenant of good faith and fair dealing. Opposition at 4. It is undisputed that Maryland implies such a covenant in most contracts. However, it cannot be disputed that Maryland does not recognize a cause of action for breach of such a covenant. Assuming, *arguendo*, that such a cause of action is recognized under Maryland law, and that Sagent has breached its duty of good faith and fair dealing under the Joint Intellectual Property Agreement ("JIPA"), attached as Exhibit A to Sagent's Motion to Dismiss,

Count III of the Counterclaim must nonetheless be dismissed because Micros has failed to allege that Sagent's breach prevented Micros from performing its obligations under the JIPA.

In support of its contention that Maryland recognizes a cause of action for breach of a covenant of good faith and fair dealing in a contract Micros cites Eastern Shore Mkts, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175 (4th Cir. 2000). Opposition at 4. However, in Lofton v. TLC Laser Eye Centers, Inc., 2001 WL 121809 (D. Md. 2001), a case decided some eight months after Eastern Shore Markets, this court (Blake, J.) held, "Maryland courts have recognized that every contract imposes a duty of good faith and fair dealing in its performance but have not explicitly recognized a separate cause of action relating to this duty." Id. at *5 (emphasis added). The Lofton court went on to acknowledge, however, that the Eastern Shore Markets case recognized a "limited" duty of good faith and fair dealing under certain circumstances. Id. at n. 4. However, the language employed by the court in that footnote reveals the very important distinction between Maryland's recognition of a duty of good faith and fair dealing – which is undisputed – and a cause of action arising from a breach of that duty. Footnote 4 to the Lofton decision first notes that several recent cases decided by the court have held that Maryland does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing.[1] Id. It then goes on to note that the Eastern Shore Markets case recognized a "limited duty of good faith and fair dealing" in Maryland contracts. Id. (emphasis added). The distinction evident in this language compels the conclusion that

[1] Those cases include AT Assoc., Inc. v. JHPIEGO, Corp., 104 F. Supp. 523, 534 (D. Md. 2000)(Harvey, J.); Baker v. Sun Co., 985 F. Supp.2d 609 (D. Md. 1997)(Young, J.); and Howard Oaks, Inc. v. Maryland Nat'l Bank, 810 F.Supp. 674 (D. Md. 1993)(Smalkin, J.).

Eastern Shore Markets does not stand for the proposition that Maryland recognizes a separate cause of action for breach of an implied covenant of good faith and fair dealing in a contract, contrary to Micros' contention.

Assuming, *arguendo*, that Maryland recognized a cause of action for breach of an implied covenant of good faith and fair dealing in a contract, it is clear that such a covenant is limited to prohibiting one party from acting in such a manner as to prevent the other party from performing his obligations under the contract. Eastern Shore Markets, 213 F.3d at 182-83; Lofton, 2001 WL 121809 at *5, n. 4; Parker v. Columbia Bank, 91 Md.App. 346, 604 A.2d 521, 531 (1992). In Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424 (4th Cir. 2001), Edell and his firm sought financial redress from the Angelos firm for the Angelos firm's alleged lack of good faith and fair dealing in performing its obligations under a contract between the parties. Id. at 444. The trial court granted summary judgment in favor of the Angelos firm on this count and the Fourth Circuit affirmed that decision, concluding that the Edell firm had not alleged that Angelos' breach had prevented it from performing its own obligations under the contract. Id.

A similar result is compelled based on the allegations in the case at bar. At no time does Micros allege that Sagent's alleged breach of its duty of good faith and fair dealing prevented Micros from performing its obligations under the JIPA. In fact, Count III of Micros' Counterclaim alleges that Micros "acted" in the wake of Sagent's alleged breach. Counterclaim at ¶51. Micros alleges further that it expended significant sums of money to perform its obligations under the JIPA. Id. at ¶46. These allegations are absolutely inconsistent with the notion that Micros was prevented from performing its obligations under the JIPA as a result of Sagent's alleged breach of its covenant of good faith and fair dealing. Micros' failure to allege

that Sagent's alleged breach prevented Micros from performing its obligations under the JIPA compels dismissal of Count III of the Counterclaim, even if Maryland recognized a cause of action for breach of a covenant of good faith and fair dealing, which it does not.

For the foregoing reasons, and those set forth in Sagent's Motion to Dismiss, Count III of Micros Counterclaim should be dismissed.

B. Count II of Micros' Counterclaim (Negligent Misrepresentation) Should Be Dismissed Because Sagent Owed No Duty to Micros; Contractual Privity Does Not Automatically Give Rise to the Imposition of a Tort Duty Under Maryland Law.

In its Opposition, Micros incorrectly contends that contractual privity between parties necessarily gives rise to the "intimate nexus" required to impose a tort duty. Opposition at 6 (citing Jacques v. First Nat'l Bank of Maryland, 307 Md. 527 (1986)). In Flow Indus., Inc. v. Fields Constr. Co., 683 F. Supp. 527 (D. Md. 1988)(Motz, J.), this court squarely rejected this simplistic formula and questioned the reliance on Jacques to support the contention. In Flow Industries, a general contractor brought a negligent misrepresentation claim against several parties based on the delayed delivery of pumps needed for the construction of a hospital. One of the parties sued was the manufacturer of the pumps, with whom the general contractor was in privity of contract. Id. at 529-30. The general contractor alleged that the pump manufacturer misrepresented the date by which the pumps would be delivered. Id. at 529. The court observed that Jacques – the case cited by Micros in the instant case – was actually not a negligent misrepresentation case and could not therefore be said to establish the standard by which it should be determined whether parties in contractual privity owe a tort duty to one another. Id. at 530. The court opined, "Thus it is too facile to posit the equation of Jacques and Martens Chevrolet [also cited by Micros] automatically equals a tort duty upon those in privity to use

reasonable care in what they say to one another." Id.; see also 21st Century Properties v. Carpenter Insulation & Coatings Co., 694 F. Supp. 148 (D. Md. 1988)(expressing reservation regarding the scope of the holding in Jacques). The court observed certain situations in which the imposition of such a duty is proper, but noted:

> However, it would be quite another thing to hold that whenever two businessmen have a contract between themselves, they are under a tort duty of care to one another for statements made during the course of their relationship. As the Supreme Court has stated under analogous circumstances, if the law in this area "were allowed to progress too far, contract law would drown in a sea of tort."

Id. (quoting East River Steamship Corp., v. Transamerica Delaval, Inc., 476 U.S. 858, 866, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986)).

The Flow Industries court concluded that the pump manufacturer owed no tort duty to the general contractor even though the parties were in contractual privity and, therefore, held that the general contractor's negligent misrepresentation claim was not actionable. Id. at 530. In this regard, the Court also focused on the fact that the general contractor had alleged only economic loss stemming from the pump manufacturer's alleged misrepresentations, and opined:

> Where, however, as here, the controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businessmen, it is plainly contract law which should provide the rules and principles by which the case is to be governed.

Id.; see also Heckrotte v. Riddle, 224 Md. 591, 595, 168 A.2d 879, 882 (1961)("[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort."). Even if Sagent and Micros were in privity of contract at the time the alleged misrepresentations were

allegedly made by Sagent, that fact alone does not automatically give rise to the imposition of a tort duty. It is clear that Maryland law affords greater protection to statements made by businessmen in a commercial context. See e.g. 21st Century Properties, 694 F. Supp. at 154 ("[A]rms length negotiations between representatives of business entities ... cannot be said to be "intimate" unless language is to be stripped of all meaning.").

C. No Privity of Contract Existed Between Sagent and Micros As of the Dates on Which The Alleged Misrepresentations Were Made.

As discussed above, contrary to Micros' assertion, even if Micros and Sagent were in contractual privity, that fact alone does not automatically give rise to a tort duty owed by Sagent to Micros. However, no contractual privity existed between Micros and Sagent as of the time the alleged misrepresentations by Sagent personnel were made, May 10, 2000 and June 6, 2000.[2] See Counterclaim at Count II and ¶¶6 and 7. The June 30, 2000 contract that forms the basis of both Sagent's breach of contract claim and Count II of Micros' Counterclaim had not yet been signed as of those dates and, therefore, no contractual privity existed between the parties. The record is clear that to the extent the alleged misrepresentations were made at all – which Sagent denies – they were made before the June 30, 2000 contract was signed by Micros. Therefore, Sagent owed no duty to Micros.

As Sagent owed no tort duty to Micros, Count II of Micros' Counterclaim should be dismissed.

[2] Micros incorrectly contends that Sagent has failed to deny that the statements cited in support of Micros' negligent misrepresentation claim were made. Opposition at 6. In his deposition, Dan Van Veelen of Sagent flatly denied that the statements set forth in ¶¶6 and 7 of the Counterclaim were made. See Van Veelen Tr. (Exhibit A hereto) at 53-54.

  D. Count I of Micros' Counterclaim (Fraud) Should Be Dismissed Because the Statements Cited In Support of That Claim Do Not Prove Fraud By Clear and Convincing Evidence; This Court Has Not Hesitated to Resolve Questions of Intent in the Context of Summary Judgment Motions on Fraud Claims.

The disposition of fraud claims at the summary judgment stage is not as uncommon as Micros suggests in its Opposition. Micros contends that summary judgment is particularly inappropriate when the claim at issue -- such as fraud -- has intent as one of its elements. Opposition at 11. However, this court has not hesitated to resolve the issue of intent in considering summary judgment motions in fraud claims. In Paramount Brokers, Inc. v. Digital River, Inc., 126 F. Supp.2d 939 (D. Md. 2000), for instance, this court did not hesitate to enter summary judgment in favor of the defendant on plaintiff's fraud claim, a decision the court predicated exclusively on its analysis of the issue of intent. In Paramount Brokers, a broker sued a seller of software for breach of contract and fraud, alleging that the seller had sold software directly to a buyer without using the broker's services and without compensating the broker. Id. at 941. As a preliminary matter, the court observed, "[t]he pending civil action is essentially a contract case governed by principles of contract law .... [and] Plaintiff's attempt to add a tort claim in a case of this sort is suspect." Id. at 950 (citing 21st Century Properties, supra); see also Flow Indus., 683 F. Supp. at 530 n.5 ("[T]o the extent [the alleged negligent misrepresentations] were promissory in nature, they may be enforced only by contract remedies, not even in an action for fraud."). The court concluded that the plaintiff had failed to prove by clear and convincing evidence that the defendant's allegedly fraudulent statements were made with the intent to defraud the plaintiff. Id. Specifically, the court held:

> The allegedly fraudulent statements were made in the course of negotiations between two business entities. The statements of

> defendant's representatives relied upon by plaintiff did no more than indicate a desire on the part of defendant that the negotiations would be fruitful. The statements at issue were made during the parties' negotiations. They were not fraudulent because they related to the future course of the business relationship between the parties. Representations as to what will be performed or will take place in the future are regarded as predictions and hence are not fraudulent. Miller [v. Fairchild Indus., Inc.], 97 Md.App. at 342, 629 A.2d 1293. Proof that defendant's expectations were never realized does not amount to clear and convincing evidence of knowingly fraudulent misrepresentations.

Id. at 950-51 (emphasis added); see also Abt Assocs., Inc. v. JHPIEGO Corp, 104 F. Supp.2d 523, 537 (D. Md. 2000) (entering summary judgment dismissing fraud claim and holding, "Plaintiff here is seeking to prove fraud inferentially by asserting that defendant's statements were never realized and that they therefore must have constituted fraud. Proof of this sort does not amount to clear and convincing evidence of knowingly fraudulent misrepresentations or of misrepresentations made with reckless indifference as to their truth.").

This court has not hesitated to grapple with the question of intent that is inherent in any analysis of a fraud claim. Nor has it hesitated to predicate its summary judgment decisions in fraud claims on that very analysis. The evidence in the record is clear that, like the alleged fraudulent statements in Paramount Brokers, the statements cited by Micros in support of its fraud claim do not prove by clear and convincing evidence that Sagent acted with the intent to defraud Micros, even if those statements were made. Those statements were made in the context of negotiation of a contract and merely represented expectations about the parties' future business relationship, as evidenced by the testimony of Scott Callnin of Micros when he described the June 6, 2000 meeting between the parties (".... the upbeat nature of going forward with the project and being able to find some clients eventually for this."). Callnin Tr. (Exhibit B

to Sagent's Motion to Dismiss) at 78. That the parties' hopes and expectations for their future business relationship did not come to fruition does not render Sagent's alleged statements fraudulent.

E. The Record Is Absolutely Devoid of Evidence Proving By Clear and Convincing Evidence That Sagent Acted With the Intent to Deceive Micros, Compelling Dismissal of Count I of the Counterclaim.

In an effort to salvage its hollow allegation that Sagent made the statements seen in ¶¶6 and 7 of the Counterclaim with the requisite intent to deceive it, Micros cites one passage from Peter Rogers' deposition and two from Dan Van Veelen's. Opposition at 11-12. From these passages Micros concludes that "Sagent's business was not doing well during calendar 2000, that Sagent was desperate for a sale, and that the proposed transaction [reflected in the June 30, 2000 contract] was very large." Opposition at 12. It is unclear, however, how these conclusions – even if the court accepts them as reasonable – prove that Sagent acted with the intent to deceive Micros. That Sagent -- a technology company -- was not "doing well" in 2000 is hardly a secret as that was the fate of nearly every company listed on the NASDAQ at the time. In fact, in his deposition, Scott Callnin of Micros testified that his company was also suffering financially in 2000.

Q: You mentioned Micros' financial condition at that point. Describe for me generally what the financial condition of the company was at that time?

A: Certainly not as strong as it had been a couple years prior. At that point we had followed the rest of the technology and hospitality companies into downward trends. ....

Callnin Tr. (Exhibit B hereto) at 25-26. To the extent that Sagent's financial condition in 2000 is reflective of an intent to deceive, Sagent suggests that Micros' compromised financial condition

at that same time should be considered as a motive for Micros' refusal to pay for the $112,000 worth of software it purchased from Sagent on June 30, 2000.  Additionally, there is absolutely nothing in the three deposition passages cited by Micros that suggests that Sagent was "desperate" for a sale.  Similarly, that Sagent considered the June 30, 2000 sale to be a "very large transaction" does not remotely prove that Sagent acted with an intent to deceive, an element that Micros must prove through clear and convincing evidence.  See VF Corp. v. Wrexham Aviation Corp., 350 Md. 693, 715 A.2d 188 (1998).

For the foregoing reasons, and those set forth in Sagent's Motion to Dismiss, Count I of Micros' Counterclaim should be dismissed.

    F.    Counts II, III and IV of Micros' Counterclaim Are Not Appropriately Venued In This Court As They Arise From the JIPA, a Contract That Contains a Choice of Law/Choice of Forum Provision That Dictates That Any Action Related to That Contract Be Brought in Santa Clara County California and Decided Under California Law.

Although Micros attributes a substantial portion of its Opposition to an analysis of the common law parol evidence rule, the thrust of Sagent's Motion to Dismiss Counts II, III and IV is based on the choice of law/choice of forum provision contained in the JIPA, the contract on which those counts are predicated.  Stated simply, to the extent that Micros wants to litigate any matter related to the JIPA, it must do so in Santa Clara County California under California law, as reflected in the clear and unambiguous terms of that contract.  Venue in this Court is simply not proper for the consideration of Counts II, III and IV of Micros' Counterclaim as they arise from the JIPA.

    G.    Sagent Has Not Waived the Defense of Improper Venue.

In its Opposition, Micros does not challenge the substance or validity of the choice of

law/choice of forum clause in the JIPA. Rather, Micros contends that Sagent has acted in such a way as to waive its right to argue that that clause compels the dismissal of Counts II, III and IV of the Counterclaim in this Court based on improper venue. Specifically, Micros contends that Sagent's motion for the admission *pro hac vice* of an out-of-state attorney, its motion *in limine* seeking the exclusion of parol evidence, and its pursuit of discovery of Micros' allegations related to the JIPA bar Sagent from urging dismissal of Counts II, III and IV of the Counterclaim based on improper venue. Opposition at 14. Micros fails to cite a single Maryland case in support of its position.

Determining whether a party has acted in such a manner as to waive her venue objection must be determined based on the individual facts of each case. There is no "clear boundary line between what action a party may take during the pre-trial stage and still invoke its venue objection and what conduct on its part will constitute waiver of that defense." Sherman v. Moore, 86 F.R.D. 471, 473 (S.D.N.Y. 1980). Although Sagent's improper venue defense applies only to Micros' Counterclaim, Micros cites conduct by Sagent that applies to the prosecution of Sagent's breach of contract claim as well as to its defense of Micros' Counterclaim. The *pro hace vice* admission of Adron Beene as co-counsel for Sagent, for example, obviously admits Mr. Beene for purposes of the entire case, not merely the defense of Micros' Counterclaim. Sagent's Motion *In Limine* to Exclude Parol Evidence – also cited by Micros in support of its position – seeks to exclude parol evidence related to the June 30, 2000 contract between the parties, as discussed further below. These examples cited by Micros are unrelated to Micros' Counterclaim and, therefore, are unrelated to Sagent's improper venue defense. Finally, as reflected in Micros' Opposition, the "extensive" discovery Sagent has pursued related to the JIPA

– also cited by Micros -- occupies all of 4 pages throughout the 163 pages that comprise the Rogers and Callnin deposition transcripts. Opposition at 14.

In Sherman, the defendants did not assert a defense of improper venue in their initial Answer to the Complaint. Id. at 472. However, they did assert such a defense in their Amended Answer, filed two months later, and subsequently moved to dismiss the Complaint on the grounds of improper venue. Id. at 473. In response, plaintiff argued that defendants had waived the improper venue defense by failing to file a timely motion to dismiss the Complaint on that ground or, alternatively, by proceeding on the merits of the action. Id. The court held that defendants had not waived their improper venue defense. Id. at 474.

Indeed, other courts have also held that a party does not waive the improper venue defense by engaging in discovery. See Shaw v. United States, 422 F. Supp. 339 (S.D.N.Y. 1976) (defense not waived where answer raised improper venue and motion to dismiss was filed 13 months after answer and 6 months after completion of discovery); Sherman v. United States, 246 F. Supp. 547 (W.D. Mich. 1965) (defense not waived where respondent proceeded with pretrial discovery and moved to dismiss at pretrial conference); Heiss v. Nielsen, 132 F. Supp. 541 (D. Neb. 1955) (defense not waived where defendant first filed motion to dismiss for improper venue and, before motion was decided, participated in taking of depositions and filed answer, which did not assert improper venue defense, and then moved for summary judgment). Moreover, some courts have required that the party contending that his opponent has acted in such a way as to waive the improper venue defense demonstrate prejudice resulting from that conduct. See Shaw v. United States, supra. There is no evidence -- or even suggestion -- that Micros has been prejudiced by Sagent's pretrial conduct in the face of its improper venue defense.

Finally, the JIPA contains a provision that the failure of either party to enforce any provision of that contract "shall in no way be construed to be a waiver of such provision .... or the right of either party thereafter to enforce [that] provision." <u>See</u> Exhibit A to Sagent's Motion to Dismiss at ¶ 11.2. Accordingly, even if it is accepted that Sagent's pretrial conduct constitutes a failure on its part to enforce the choice of law/choice of forum provision, the JIPA is clear that Sagent has not waived its right to enforce that provision now.

For the foregoing reasons, Sagent respectfully submits that it has not acted in such a way as to waive its improper venue defense. Sagent urges the dismissal of Counts II, III and IV of the Counterclaim based on improper venue.

H. <u>Micros Inappropriately Attempts to Admit Parol Evidence Under the Guise of Its Defense of Sagent's Breach of Contract Claim In the Hopes That the Court Will Consider That Parol Evidence in the Prosecution of Micros' Counterclaim</u>.

In its Opposition, Micros incorrectly contends that Sagent has moved for dismissal of Counts II, III and IV of Micros' Counterclaim based on the parol evidence rule. Opposition at 2-3. In fact, Sagent has moved for dismissal of those counts of the Counterclaim because they relate to the JIPA, a contract that contains a choice of law/choice of forum provision that dictates that actions related to that contract be brought in Santa Clara County California and decided under California law. Sagent's Motion to Dismiss at 2-4. In its Motion to Dismiss, Sagent also argued, however, that to the extent that Counts II, III and IV of Micros' Counterclaim are predicated upon the alleged oral representations reflected in ¶¶ 6 and 7 of the Counterclaim, those counts must be dismissed if the Court grants Sagent's Motion *In Limine* to Exclude Parol Evidence. Sagent's Motion to Dismiss at 7-8.

The true basis upon which Sagent seeks dismissal of Counts II, III and IV of the

Counterclaim requires a close examination of the relationship between Sagent's Motion to Dismiss and its Motion *In Limine* to Exclude Parol Evidence. That examination, in turn, reflects Micros' efforts to misconstrue that basis. In its Opposition, Micros incorrectly contends that Sagent "seeks to exclude parol evidence of oral statements made by its personnel relating to the [Joint Intellectual Property Agreement] executed by Micros and Sagent in 1999 ..." Opposition at 1. In fact, although Sagent has indeed moved *in limine* to exclude certain parol evidence, it has not moved to exclude parol evidence of oral statements related to the JIPA. Indeed, Micros has not referred in its Counterclaim or in any deposition testimony to any specific statements allegedly made by Sagent representatives that relate to the JIPA.[3] The oral statements set forth in ¶¶6 and 7 of Micros' Counterclaim, and discussed in the depositions of Peter Rogers, Scott Callnin and Dan Van Veelen, all relate to the June 30, 2000 contract Micros entered into with Sagent, the contract that forms the basis of Sagent's breach of contract claim. Each such statement allegedly occurred at either the May 10, 2000 or June 6, 2000 meetings between representatives of both parties, some five months after the JIPA was executed by the parties. See Micros' Counterclaim at ¶¶ 6, 7; Callnin Tr. (Exhibit C to Sagent's Motion In Limine) at 26-27; Rogers Tr. (Exhibit B to Sagent's Motion In Limine) at 14.

---

3 Although Count IV of Micros' Counterclaim alleges fraud in the inducement related to the JIPA, no specific, allegedly false statements are cited in support of that allegation. Although the statements seen in ¶¶6 and 7 of the Counterclaim are incorporated in Count IV, those statements allegedly occurred on May 10, 2000 and June 6, 2000, see Counterclaim at ¶¶6, 7, several months after the JIPA was executed by the parties in December 1999 and relate only to the June 30, 2000 contract that forms the basis of Sagent's breach of contract claim. Micros' failure to allege with specificity allegedly false statements in support of the allegations in Count IV of the Counterclaim compels the dismissal of that Count for failure to state a claim. See First Guar. Mortg. Corp. v. Procopio, 217 F. Supp.2d 633 (D. Md. 2002).

This distinction is important as it reflects Micros' inappropriate attempt to "shoe horn" parol evidence of oral statements allegedly made by Sagent representatives into its defense of Sagent's breach of contract claim, where the parol evidence rule of the UCC clearly prohibits such evidence. Stated differently, Micros attempts to admit parol evidence under the guise of prosecuting its Counterclaim in the hope that the Court will also hear that parol evidence in Micros' defense of Sagent's breach of contract claim. In this regard, Micros contends that parol evidence of oral statements allegedly made by Sagent representatives is admissible under the fraud exception to the common law parol evidence rule.[4] See Opposition at 2. However, as noted above, Micros alleges specific, allegedly fraudulent statements only in the context of the June 30, 2000 contract it entered into with Sagent that forms the basis of Sagent's breach of contract claim. See Micros' Counterclaim at Count I. Micros has not alleged with the requisite particularity fraud in the context of the JIPA, compelling dismissal of Count IV. For the reasons set forth in Sagent's Motion to Dismiss and in this reply memorandum, the fraud counts in Counts I and IV of the Counterclaim should be dismissed as a matter of law. If the Court agrees and dismisses those counts, Micros is left without support for its contention that parol evidence is admissible, as those are the only instances in which Micros alleges fraud.[5]

I. The Common Law Parol Evidence Rule Cited By Micros Is

---

4 As the contract at issue is one for the sale of "goods," it is governed by the Uniform Commercial Code ("UCC"), Md. Code Ann. Com. Law I §§ 1-101, et seq. (2002 Repl. Vol.), and the parol evidence rule seen in § 2-202 therein.

5 As Micros has not alleged fraud in the context of the JIPA, the fraud exception to the common law parol evidence rule -- even if that were the applicable rule, which it is not -- does not render admissible the oral statements referenced by Micros in its prosecution of those allegations in the Counterclaim that relate to the JIPA, Counts II, III and IV.

Inapplicable As the Contract at Issue Is Governed by the UCC and the Parol Evidence Rule Seen Therein, Which Does Not Include a Fraud Exception.

In its Opposition, Micros cites the common law parol evidence rule. Opposition at 2. However, as the contract at issue is one for the sale of "goods," it is governed by the Uniform Commercial Code ("UCC"), Md. Code Ann. Com. Law I §§ 1-101, et seq. (2002 Repl. Vol.), and the parol evidence rule seen in § 2-202 therein. Unlike the common law parol evidence rule, the UCC parol evidence rule does not include a fraud exception. Therefore, Micros' reliance on the common law parol evidence rule -- and the fraud exception thereto – is misplaced and that exception is irrelevant for purposes of determining the admissibility of parol evidence in the context of the UCC-governed contract at issue in Sagent's breach of contract claim.

In further reply to Micros' Opposition, Sagent adopts and incorporates herein by reference its Motion *In Limine* to Exclude Parol Evidence.

CONCLUSION

For the foregoing reasons, and those set forth in Sagent's Motion to Dismiss, Micros' Counterclaim should be dismissed.

Respectfully submitted,

*Scott H. Phillips*

Scott H. Phillips, #013244
SEMMES, BOWEN & SEMMES
250 W. Pratt Street
Baltimore, Maryland 21201
(410) 539-5040

Counsel for Sagent Technology, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of April, 2003, a copy of the foregoing Reply to Defendant's Opposition to Motion to Dismiss Counterclaim or, Alternatively, for Summary Judgment was filed and served electronically on all counsel of record.

*Scott H. Phillips*
Scott H. Phillips

(B0336337.WPD;1)