IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAGENT TECHNOLOGY, INC. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JFM-02-2505 |
| MICROS SYSTEMS, INC., et al | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

**SAGENT TECHNOLOGY, INC.'S REPLY TO DEFENDANT'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Sagent Technology, Inc. ("Sagent"), by and through undersigned counsel, hereby replies to Micros Systems, Inc.'s ("Micros") Opposition to Sagent's Motion for Summary Judgment ("Opposition").

Micros' Opposition fails to create a question of fact regarding certain inescapable facts that compel the entry of summary judgment in favor of Sagent on its breach of contract claim. The price quote that Dan Van Veelen of Sagent sent to Peter Rogers at Micros on or about June 20, 2000 constituted an invitation to Micros to make an offer. See Maryland Supreme Corp. v. Blake Co., 279 Md. 531, 539, 369 A.2d 1017 (1977); Audio Visual Assocs., Inc. v. Sharp Electronics Corp., 210 F.3d 254, 259 (4th Cir. 2000). The Purchase Order that Peter Rogers signed and subsequently sent to Sagent constituted Micros' offer to purchase the products specified therein for the price reflected on the Purchase Order.[1] Audio Visual Assocs., Inc., 210 F.3d at 259. Sagent accepted this offer by promptly shipping conforming goods, as permitted

---

[1] Rogers also wrote "approved" on and signed the price quote that had been provided by Dan Van Veelen, and attached it to the Purchase Order he sent to Sagent on June 30, 2000. Rogers Tr. at 18-19, 21 (Exhibit A hereto).

under § 2-206(1)(b) of the UCC.  See Md. Ann. Code Com. Law I § 2-206(1)(b).[2]  Finally, there is no contention by Micros that it has paid Sagent any portion of the purchase price as set forth in the Purchase Order and as subsequently amended at Micros' request.[3]

    A.    The June 30, 2000 Contracted Constituted and Reflected the Parties' Final and Complete Agreement on the Transaction.

Contrary to Micros' contention, see Opposition at 8-10, the evidence in the record establishes without question that the parties intended the June 30, 2000 contract to constitute and reflect their final and complete agreement on the transaction memorialized therein.  As Micros made this same argument in its Opposition to Sagent's Motion In Limine to Exclude Parol Evidence, in the interest of brevity Sagent adopts and incorporates herein by reference its Reply to that Opposition (filed April 28, 2003), and specifically that portion of the Reply establishing the complete and final nature of the contract (i.e., pages 7-12).

Additionally, Micros contends that the parties never reached agreement on the "value of the order."  Opposition at 10.  As seen in footnote 3, the record reflects that the parties were

---

[2] Micros admits that Saget delivered to Micros' Belstville, Maryland office the products specified in the Purchase Order.  See Rogers Tr. at 43-44 (Exhibit A hereto); Callnin Tr. at 58-59 (Exhibit B hereto).

[3] Although Micros alleges that Sagent unilaterally amended the purchase price 16 months after the date of the contract, see opposition at 14, Scott Callnin's testimony and the documentary evidence in the record make it clear that it was Micros that requested that the maintenance component of the June 30, 2000 contract be deleted, a request that Sagent accommodated. See Exhibit F to Sagent's Motion In Limine at S00021 (Callnin to Van Veelen: "I'd like to take the $24,000 for support off the Rogers' purchase. ... Let me know if that is acceptable."); Callnin Tr. at 30-31 (Exhibit B hereto) ("[the parties] had had verbal agreement sometime not too long  after the initial meeting in [sic] June 6th, 2000 about making the changes to the software mix ..."). Once Sagent had accommodated Micros' request in this regard, the parties clearly understood that the value of the contract was reduced from $136,000 to $112,000.  Callnin Tr. at 29 (Exhibit B hereto).

absolutely clear that the value of the contract was $112,000.[4]

Accordingly, the facts in the record conclusively establish that a contract was formed when Sagent accepted Micros' offer (as reflected in its Purchase Order) by delivering to Micros conforming goods. Moreover, this contract reflected the parties' final and complete agreement on the transaction. Micros breached this contract when it failed to pay Sagent for the products it had ordered and purchased.

      B.     <u>Article 2 of the UCC Governs This Contract</u>.

Micros contends that Article 2 of the UCC does not apply to this sale. Opposition at 10-14. In this regard, Micros sets for the same arguments it raised in its Opposition to Sagent's Motion In Limine to Exclude Parol Evidence. As Sagent has set forth its position on this issue in its Reply to that Opposition, for the sake of brevity Sagent adopts and incorporates herein by reference the relevant portions of its Reply to Micro's Opposition to Motion In Limine to Exclude Parol Evidence (pp. 1-7).

      C.     <u>The Parol Evidence Cited By Micros Does Not Create a Question of Fact Sufficient to Defeat Sagent's Motion for Summary Judgment</u>.

Micros contends that the parol evidence that Sagent seeks to exclude creates a question of fact sufficient to defeat Sagent's Motion for Summary Judgment. Opposition at 8. Sagent has moved *in limine* to exclude the parol evidence that Micros relies upon in this regard. To the extent that the Court grants that motion, that parol evidence obviously cannot be used to create a

---

[4] The deposition testimony of Scott Callnin cited in support of Micros' position, Callnin Tr. at 30-31, discusses only that Sagent had not as of that time provided Micros with a corrected invoice. That testimony does not establish that there was any doubt as to the value of the contract.

question of fact. Additionally, as set forth below, Micros argues that the parol evidence – if deemed admissible – renders the contract void on the basis of fraud and misrepresentation, and thereby defeats Sagent's Motion for Summary Judgment. As Micros initially sought monetary damages for fraud and misrepresentation in its Counterclaim, it has elected its remedy and cannot now seek equitable rescission based on that parol evidence.

> D.    Micros Elected to Seek Monetary Damages In Conjunction With Its Fraud and Misrepresentation Claims and Is Now Barred From Seeking an Equitable Remedy for Those Claims.

In an effort to demonstrate that no contract existed, and thereby defeat Sagent's Motion for Summary Judgment, Micros contends that the parol evidence in question renders the June 30, 2000 contract void. Opposition at 8. Micros relied on this same parol evidence in support of the fraud, negligent misrepresentation and fraud in the inducement counts of its Counterclaim. See Counterclaim at Counts I, II and IV. Micros seeks only monetary damages in each of these counts. However, inappropriately, Micros now seeks an equitable remedy by contending that the statements allegedly made by Sagent personnel render the contract void.

Maryland law imposes an election of remedy upon a party to a contract that is allegedly aggrieved by the acts or omissions of the other party to the contract. Such a party may either affirm the contract's validity and sue for specific performance or damages or, alternatively, may repudiate the contract and seek rescission of the contract. See Lazorcak v. Feurstein, 273 Md. 69, 74-75, 327 A.2d 477 (1974). These alternative remedies are "inconsistent and mutually exclusive" and the election of remedies applies even where fraud is alleged. Merritt v. Craig, 130 Md. App. 350, 746 A.2d 923 (2000). The Merritt court has opined:

> Upon the discovery .... of the fraudulent misrepresentation, the purchaser had to elect between two rights. He was put to the

> choice of repudiating or ratifying the conveyance, although the transaction had been fully completed by conveyance and payment. If he had adopted the first alternative he repudiated the conveyance and sought its rescission and a restoration of his situation before the contract; but if he chose the second, he ratified the grant but could obtain damages to redress the injury inflicted by the false and fraudulent representation. <u>These two rights were inconsistent and mutually exclusive, and the discovery [of the alleged fraud] put the purchaser to a prompt election</u>.

<u>Id.</u> at 358 (quoting <u>Wolin v. Zenith Homes, Inc.</u>, 219 Md. 242, 250-51, 146 A.2d 197 (1959), <u>cert. denied</u>, 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959)(emphasis added). The <u>Merritt</u> court opined similarly:

> Appellants .... may not successfully rescind the contract while simultaneously recovering compensatory and punitive damages.... The restoration of the parties to their original position is incompatible with the circumstance when the complaining party is, at once, relieved of all obligations under the contract while simultaneously securing the windfall of compensatory and punitive damages beyond incidental expenses.

<u>Merritt</u>, 130 Md. App. at 366; <u>see</u> <u>also</u> <u>Glen Alden Corp. v. Duvall</u>, 240 Md. 405, 430, 215 A.2d 155 (1965)(a party who elects to rescind deprives himself of the right to seek compensatory damages for the breach). It is also clear that a party must act promptly after discovering the grounds for rescission or he has waived his right to rescind. <u>Finch v. Hughes Aircraft Co.</u>, 57 Md. App. 190, 244, 469 A.2d 867, <u>cert</u>. <u>denied</u>, 300 Md. 88, 475 A.2d 1200 (1984), <u>cert</u>. <u>denied</u> 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985). Having raised for the first time in its Opposition the contention that the contract is void, the record is clear that Micros did not promptly seek to rescind the contract and has therefore waived that right.

Having prayed for a remedy at law -- monetary damages -- in its Counterclaim, Micros cannot now seek the equitable remedy of rescission based on the statements allegedly made by

Sagent personnel and cited in support of Micros' fraud and misrepresentation claims. Micros has elected its remedy and is now barred from revisiting that election. Therefore, Micros should not be heard to contend that its contract with Sagent is void in an effort to counter Sagent's Motion for Summary Judgment.

Even if admissible, the parol evidence cited by Micros is not probative of whether a contract was formed on June 30, 2000, whether Micros breached that contract or whether Sagent suffered damages as a result of that breach. As such, the parol evidence does not create a question of fact sufficient to defeat Sagent's Motion for Summary Judgment. Indeed, if, in his telephone conversation with Peter Rogers, referenced by Micros, see Opposition at 7-8, Gene Garrett of Sagent truly assented to the alleged promises set forth in Micros' Opposition, that evidence only serves to establish further that there was a "meeting of the minds" giving rise to the June 30, 2000 contract.

    E.    <u>Micros' Obligation to Pay Sagent Was Not Conditional; Micros Breached the Contract When It Failed to Pay Sagent By July 30, 2000, as Required By The Clear and Unambiguous Terms of the Contract. Sagent's Damages Are Therefore Fixed and Certain</u>.

Micros asserts that its "continued failure to pay, and its subsequent return of the software[5] ..." reflect that Micros' obligation to pay Sagent did not arise until Micros had identified an end-user to whom it could resell the software. Opposition at 10. This is the first time Micros has made this allegation and it is without support in the record. The June 30, 2000 Purchase Order,

---

[5] That Micros returned the software to Sagent is completely irrelevant. As Micros held the software for approximately 14 months, Callnin Tr. at 60-61 (Exhibit B hereto), without seasonably rejecting the software or seasonably notifying Sagent of its intention to reject the software, Micros "accepted" the software under the UCC. See Md. Code Ann. Com. Law I §§ 2-606(1)(b) and 2-602(1).

attached hereto as Exhibit C, clearly stipulates that payment was due within 30 days. Thus, the contract does not make Micros' obligation to pay contingent upon anything. Additionally, Micros cites absolutely no evidence – even parol evidence – in support of its assertion that its obligation to pay Sagent was conditional. Even if accepted as true and admissible, none of the statements allegedly made by Sagent personnel at the June 6, 2000 meeting -- itemized at pp. 4-8 of Micros' Opposition -- even hints at such a notion. Indeed, the fact that Micros is now heard to debate when its "obligation" to pay Sagent arose in the context of "Micros' performance of the agreement ...", see Opposition at 10, is clear evidence that Micros considered the June 30, 2000 contract to be just that, a contract.

Section 1-106 of the UCC provides that the aggrieved party "may be put in as good a position as if the other party had fully performed [its obligations under the contract] ..." Md. Code Ann. Com. Law I § 1-106(1) (2002 Repl. Vol.). The only obligation that Micros had under the contract was to pay Sagent for the software it had purchased. Section 2-703 of the UCC sets forth a seller's remedies where the buyer fails to pay for goods he has accepted.[6] Among the seller's remedies is the recovery of the sale price. Id. at 2-703(e). Section 2-709 allows the seller to recover, "together with any incidental damages ...," the price of goods accepted by the buyer. Id. at 2-703(1)(a). There is no requirement in this section that the seller attempt to resell goods the buyer has accepted, even if those goods were subsequently returned to the seller. Maryland courts have held that the seller can recover the full contract price where the seller has performed

---

[6] As set forth in footnote 5, Micros "accepted" the software it purchased from Sagent, as that term is defined in the UCC. See also Lynx, Inc. v. Ordnance Prods., Inc. v. 273 Md. 1, 327 A.2d 502 (1974)(prerequisite for rejection by the buyer is notification to seller within a reasonable period of time). There is no evidence – or even contention – that Micros timely rejected the software.

his obligations and the buyer has breached by failing to make payment.  See Precision Dev. Co. v. Fast Bearing Co., 183 Md. 399, 37 A.2d 905 (1944).

As Micros "accepted" the software it had purchased from Sagent and breached its contract by failing to pay for that software, Sagent is entitled to recover the full contract price, plus prejudgment interest.

CONCLUSION

For the foregoing reasons, and those set forth in its Motion for Summary Judgment, Sagent Technology, Inc. prays that its motion be granted.

    Respectfully submitted,

*Scott H. Phillips*
Scott H. Phillips, #013244
SEMMES, BOWEN & SEMMES
250 W. Pratt Street
Baltimore, Maryland 21201
(410) 539-5040

Counsel for Sagent Technology, Inc.

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 1st day of May, 2003, a copy of the foregoing Reply to Defendant's Opposition to Motion for Summary Judgment was filed and served electronically on all counsel of record.

                                            *Scott H. Phillips*
                                            Scott H. Phillips

(B0339248.WPD;1)