IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAGENT TECHNOLOGY, INC.   *
           *
 v.         *  Civil No. JFM-02-2505
           *
MICROS SYSTEMS, INC.   *
          *****

MEMORANDUM

Sagent Technology, Inc. ("Sagent") has filed suit against MICROS Systems, Inc. ("MSI") and fifty unnamed individuals for breach of contract. MSI has filed a counterclaim against Sagent for fraud, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. Presently pending before me are: (1) Sagent's motion in limine to exclude parol evidence; (2) Sagent's motion for summary judgment on its breach of contract claim; (3) MSI's motion for summary judgment on Sagent's breach of contract claim; and (4) Sagent's motion to dismiss MSI's counterclaims, or in the alternative, for summary judgment. On June 30, 2003, a hearing on all motions was held. For the reasons detailed below I will: (1) grant Sagent's motion in limine; (2) grant Sagent's motion for summary judgment; (3) deny in part and grant in part MSI's motion for summary judgment; and (4) grant Sagent's motion to dismiss or, in the alternative, for summary judgment.

I.

A.

On June 6, 2000, executives from Sagent and MSI met to work out an agreement regarding MSI's purchase of Sagent software for resale to MSI's customers. At the meeting, Sagent executives allegedly made a number of promises to MSI executives to induce MSI to

1

purchase the software. These promises included: (1) Sagent would help MSI resell the software; and (2) if MSI could not resell the software, MSI could return the software for a full refund. (Rogers Dep., MSI's Opp'n to Mot. for Summ. J. Ex. B, at 13-17; Rogers Aff., MSI's Opp'n to Mot. for Summ. J. Ex. A, ¶ 1; *see also* Callnin Dep., MSI's Opp'n to Mot. for Summ. J. Ex. C, at 74-77.) These promises were allegedly repeated in subsequent phone calls between Gene Garret, a Sagent executive, and Peter Rogers, an MSI executive. (Rogers Aff., MSI Opp'n to Mot. for Summ. J. Ex. D, ¶ 2.)

On June 20, 2000, Dan Van Veelan, a Sagent executive, sent a price quote for certain software, related products, and technical support to Rogers. (Price Quote, Sagent's Mot. for Summ. J. Ex. C.) On June 30, 2000, Rogers sent a purchase order for the same software, related products, and technical support to Van Veelan. (Purchase Order, Sagent's Mot. for Summ. J. Ex. D.) Neither the price quote nor the purchase order included the promises allegedly made by Sagent executives on June 6. MSI received the software sometime in the fall of 2000. (Callnin Dep., Sagent's Mot. for Summ. J. Ex. E, at 58-60.)

The purchase order totaled $136,000: $112,000 for the software and related products and $24,000 for the technical support. (Purchase Order, Sagent's Mot. for Summ. J. Ex. D.) From the fall of 2000 to October 2001, MSI did not pay Sagent because it believed the invoices it was receiving from Sagent were incorrect. (Callnin Dep., Sagent's Mot. for Summ. J. Ex. E, at 28-35.) However, there was no written correspondence suggesting that MSI did not pay Sagent because Sagent was not helping MSI resell the software. (*Id.* at 37.) In October, Sagent finally sent a corrected invoice to MSI. (Sagent Invoice, Sagent's Mot. for Summ. J. Ex. G.) The new invoice reflected the parties' agreement to remove the $24,000 charge for technical support.

2

(*Id.*)

MSI has not paid Sagent for the software and related products.  (Rogers Dep., Sagent's Mot. for Summ. J. Ex. A, at 21-22; Callnin Dep., Sagent's Mot. for Summ. J. Ex. E, at 27.)  As a result, Sagent has filed suit for breach of contract.  (Compl. ¶¶ 6-11.)  MSI has filed a counterclaim for fraud and negligent misrepresentation.  (Countercl. ¶¶ 2–36.)

B.

 In December 1999, Sagent and MSI entered a "Joint Intellectual Property Agreement" ("JIPA").  Under the JIPA, the parties agreed that they jointly owned certain computer software.  Additionally, Sagent agreed to provide MSI with marketing and consulting assistance.  (Countercl. ¶¶ 38-42.)  The JIPA contains a forum selection provision, which states: "Any action relating to this Agreement shall be brought in Santa Clara County, California."  (JIPA, Sagent's Mot. to Dismiss Ex. A, ¶ 11.5.)  According to MSI, Sagent has failed to fulfill its responsibilities under the JIPA by not providing marketing assistance or consulting services.  (Countercl. ¶¶ 43-49.)  As a result, MSI claims that Sagent has violated the covenant of good faith and fair dealing and committed fraud.  (*Id.* ¶¶ 37-61.)

II.

Sagent has filed a motion in limine to preclude the statements allegedly made by Sagent executives before the June 30 purchase order.  Sagent contends the statements are parol evidence under the Maryland Uniform Commercial Code ("U.C.C."), Md. Code Ann., Com. Law I § 2-202.  (Sagent's Mem. Supp. Mot. in Limine at 4-9.)  I agree.[1]

---

[1]MSI challenges the applicability of the U.C.C. to this transaction.  (MSI's Opp'n to Mot. in Limine at 2-7.)  I note initially that this may be an unnecessary question to resolve.  The contours of the parol evidence rule under Maryland common law and the U.C.C. are nearly

3

Under the U.C.C., parol evidence is not admissible to contradict or supplement a writing intended by the parties to be a complete and exclusive expression of their agreement. Md. Code Ann., Com. Law I § 2-202(b). However, parol evidence is admissible to prove consistent, additional terms if the writing is a final, but not complete, expression of the parties' agreement.

---

identical. *Compare* Md. Code Ann., Com. Law I § 2-202, *with Markoff v. Kreiner*, 180 Md. 150, 154-56, 23 A.2d 19, 23-24 (1941). For the sake of analytical clarity, however, I will apply the U.C.C. parol evidence rule.

The U.C.C. applies to "transactions in goods." Md. Code Ann., Com. Law I § 2-102. Something is a "good" if it is "movable at the time of identification to the contract for sale." *Id.* § 2-105(1). The computer software Sagent sold to MSI meets this definition. The software was encoded on at least one CD-ROM, and the CD-ROM was shipped to MSI. (Callnin Dep., Sagent's Reply to Opp'n to Mot. in Limine Ex. B, at 58-60.) Although the software itself technically is not a "good," the medium upon which it is distributed and sold—the CD-ROM—is a "good." *See Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 675 (3rd Cir. 1991); *cf. Comptroller of the Treasury v. Equitable Trust Co.*, 296 Md. 459, 464 A.2d 248 (1983) (concluding that the sale of computer programs was subject to sales tax because the computer programs could not be conceptually severed from the disks on which they were sold).

This is also the type of transaction to which the U.C.C. applies, even though it was labeled a license. Article 2 of the U.C.C., by its specific provisions, applies primarily to sales of goods. However, its stated scope is "transactions in goods" unless "the context otherwise requires." Md. Code Ann., Com. Law I § 2-102. Based on this language, Maryland courts have suggested that the U.C.C. applies to more than simply "sales" of goods. *See, e.g.*, *Burton v. Artery Co.*, 279 Md. 94, 113-14, 367 A.2d 935, 945-46 (1977). Presumably, therefore, the U.C.C. should apply to a transaction that, although labeled a license, is for all practical purposes a sale of computer software. *See Softman Prods. Co., LLC v. Adobe Sys. Inc.*, 171 F. Supp. 2d 1075, 1084-85 (C.D. Cal. 2001).

Applying the U.C.C. to this transaction also makes sense from a policy perspective because the U.C.C. "offers a uniform body of law on a wide range of questions likely to arise in computer software disputes." *Advent Sys.*, 925 F.2d at 676.

MSI argues that the Maryland legislature has shown its disapproval of applying the U.C.C. to computer sales transactions by enacting the Uniform Computer Information Transaction Act ("UCITA"), Md. Code Ann., Com. Law II § 22-101, *et seq.* (UCITA does not apply to this transaction because the transaction occurred before UCITA's effective date.) The enactment of UCITA, however, could also mean that the Maryland legislature was dissatisfied with how the U.C.C. handled software transactions, thus implying that the U.C.C. did apply to the sales of computer software before the enactment of UCITA. As a result, the enactment of UCITA is inconclusive on this issue.

*Id.* Parol evidence is also generally admissible to prove fraud. *See id.* § 1-103. *See generally* 1

James J. White & Robert S. Summers, *Uniform Commercial Code* §§ 2-9 to 2-11 (4th ed. 1995).

A.

To determine whether a document is a complete expression of the parties' agreement, a

court must examine the proffered additional terms. *See* Md. Code Ann., Com. Law I § 2-202(b)

cmt. 3; *Snyder v. Herbert Greenbaum & Assocs., Inc.*, 38 Md. App. 144, 151, 380 A.2d 618, 623

(1977). *See generally* White & Summers, *supra*, § 2-10, at 89-90. "If the additional terms are

such that, if agreed upon, they would certainly have been included in the document in the view

of the court, then evidence of their alleged making must be kept from the trier of fact." Md.

Code Ann., Com. Law I § 2-202(b) cmt. 3. Agreements to help resell products or grant a full

refund if products are not sold are significant business agreements. In fact, Rogers stated at his

deposition that Sagent's agreement to grant a full refund if MSI could not resell the software was

"important." (Rogers Dep., Sagent's Mot. in Limine Ex. B, at 18.) As a result, the only

reasonable inference that can be drawn is that the parties would have included these agreements

in the purchase order if they were actually agreed upon. Therefore, MSI cannot introduce the

parol evidence it seeks to introduce as additional terms.[2]

Even if the purchase order is not a complete expression of the parties' agreement, MSI's

parol evidence cannot be introduced because it is inconsistent with the terms of the purchase

order. Md. Code Ann., Com. Law I § 2-202(b). Additional terms are inconsistent with a written

---

[2]MSI's conduct following delivery of the software also reflects that the alleged
statements MSI seeks to introduce as parol evidence did not become part of the parties'
agreement. Despite making a number of attempts to correct the software invoice, MSI never
asked Sagent to help it resell the software or attempted to return the software for a full refund.

5

document if the additional terms are not reasonably harmonious with the "language and respective obligations of the parties." *Snyder*, 38 Md. App. at 152, 380 A.2d at 623. Terms that impose new legal obligations on or alter the existing legal obligations of the parties, like those proffered by MSI, are not reasonably harmonious with the terms of a written agreement. *See, e.g.*, *Harry J. Whelchel Co. v. Ripley Tractor Co.*, 900 S.W.2d 691, 693-94 (Tenn. Ct. App. 1995) (concluding that an oral agreement that a buyer would not be bound by a purchase order unless the buyer resold farm equipment contradicted the purchase order).

B.

The parol evidence MSI seeks to introduce is also not admissible to show fraud. Because the evidence contradicts the terms of the written agreement, MSI must show that the statements of Sagent's executives were intentional misrepresentations. *See Creamer v. Helferstay*, 294 Md. 107, 118, 448 A.2d 332, 337 (1982) ("The parol evidence rule precludes the granting of relief for unintentional representations preceding the contract which conflict with the terms of the contract."); 1 White & Summers, *supra*, § 2-11, at 103 ("In states which do require an element of scienter for fraud, the judge should not invoke the fraud exception to admit extrinsic evidence where he or she concludes that a misrepresentation is wholly innocent."). MSI has not made that showing.

MSI has produced no direct evidence of fraudulent intent; thus, it must produce some evidence from which fraud can be inferred. Fraudulent intent can be inferred from: (1) the situation of the parties; (2) the activity of the promisor in procuring the transaction; (3) a short time period between the promise and the failure to perform; and (4) the promisor's subsequent conduct. *Holman v. IMC Mortgage Co.*, No. 99-1778, 2001 WL 21222, at *2 (D. Md. Jan. 9,

6

2001); *see also Tufts v. Poore*, 219 Md. 1, 10-11, 147 A.2d 717, 722 (1959). Fraudulent intent

"cannot be inferred from the failure to perform the promise alone." *Tufts*, 219 Md. at 10, 147

A.2d at 722.

MSI contends that Sagent's fraudulent intent can be inferred from the following

circumstances surrounding the transaction: (1) Sagent was not doing well financially during

2000; (2) Sagent was desperate to make a sale; (3) the proposed transaction with MSI was a

large sale; (4) such a large sale would have a positive effect on Sagent's stock price and would

benefit the individuals involved in the transaction.  (*See* MSI's Opp'n to Mot. to Dismiss at 12.)

If this contention were accepted, fraudulent intent could be inferred whenever a company that is

suffering financially engages in a transaction to better its financial condition.  That is not the law

as established by the authorities just cited, and MSI's contention therefore is unavailing.

III.

Sagent has also filed a motion for summary judgment on its claim for breach of contract.

Sagent claims it had a contract to sell goods to MSI and MSI breached that contract by not

paying for the goods.  Sagent contends, therefore, that it is entitled to damages for breach of the

sales contract as a matter of law.  (Sagent's Mem. Supp. Mot. for Summ. J. at 6-9.)  Sagent is

correct.[3]

---

[3]MSI makes three arguments in response.  First, MSI contends that the pre-June 30 statements of Sagent executives constitute fraud, thus voiding the contract between the parties. (MSI's Opp'n to Mot. for Summ. J. at 4-8.)  Second, MSI contends that when the contract is viewed as a whole, including the pre-June 30 statement made by Sagent executives, it did not breach the contract.  (*Id.* at 8-10.)  Third, MSI contends that the U.C.C. does not apply, and therefore Sagent's motion for summary judgment is based on a faulty premise.  (*Id.* at 10-14.) The first two arguments fail because, as discussed above, the parol evidence rule bars admission of the pre-June 30 statements.  The third argument fails because, as also discussed above, the U.C.C. does apply to this transaction.

The price quote, purchase order, and subsequent delivery of goods clearly created a binding contract between the parties. *See, e.g.*, *Audio Visual Assocs. v. Sharp Elecs.*, 210 F.3d 254, 259 (4th Cir. 2000). It is also clear that MSI has not paid Sagent for the goods it received and accepted. A buyer's failure to pay for goods is a material breach of contract that entitles the seller to damages. *See* Md. Code Ann., Com. Law I §§ 2-607, 2-709.

When a buyer breaches a contract for the sale of goods by failing to pay the purchase price, the seller may recover the purchase price as damages. *Id.* § 2-709. A court may also award the seller prejudgment interest. *See, e.g.*, *Crystal v. West & Callahan, Inc.*, 328 Md. 318, 343, 614 A.2d 560, 572 (1992) ("The ordinary rule in contract cases, if the contract requires payment of a sum certain on a date certain, is [that] prejudgment interest typically is allowed as a matter of right."). Therefore, Sagent is entitled to the purchase price of the software plus prejudgment interest.[4]

I will calculate the prejudgment interest from November 18, 2001 because Sagent did not provide MSI with a corrected invoice until October 18, 2001 and the invoice grants MSI thirty days to provide payment. The legal rate of prejudgment interest in Maryland is six percent. Md. Const. art. III, § 57; *Fed. Sav. & Loan Ins. Corp. v. Quality Inns, Inc.*, 876 F.2d 353, 359 (4th

---

[4]MSI contends that Sagent is not entitled to summary judgment on damages. Specifically, MSI contends that because it has returned the software to Sagent, awarding Sagent the entire purchase price would place Sagent in a better position than if the contract had been performed. (MSI's Opp'n to Mot. for Summ. J. at 14-15.) MSI's argument is unpersuasive. Under Md. Code Ann., Com. Law I § 2-709(1)(a), a seller is entitled to sue for the price of goods if the goods have been accepted. The comments to section 2-709 further provide, "'Goods accepted' by the buyer under subsection (1)(a) include only goods as to which there has been no justified revocation of acceptance." *Id.* § 2-709 cmt. 5. MSI has presented no evidence that it justifiably revoked acceptance of the software. *See id.* § 2-608 (detailing the reasons for which a buyer may revoke acceptance of goods). *See generally* 1 White & Summers, *supra*, §§ 7-2 to 7-3, at 356-64.

Cir. 1989). Six percent interest compounded annually from November 18, 2001 to July 31, 2001 on the $112,000 purchase price totals $11,468.80. Therefore, Sagent's total damage award is $123,468.80.

IV.

MSI has also moved for summary judgment on Sagent's claims. Sagent does not oppose the motion as to Count II—a claim for "Common Counts"—and the motion will be granted as to that count. It is otherwise denied.

In addition to making the two contentions I have addressed above in section II, MSI argues that it is entitled to summary judgment because Sagent has failed to join parties necessary to the action. (MSI's Mem. Supp. Mot. for Summ. J. at 8.) In its complaint, Sagent alleges that "Does 1-50" should be personally liable for the debts of MSI because MSI "has not been properly maintained, is undercapitalized, has co-mingled assets, and has transferred assets without adequate consideration."[5] (Compl. ¶ 3.) MSI contends that because Sagent has failed to identify any of the "Does 1-50," Sagent's complaint should be dismissed. (MSI's Mem. Supp. Mot. for Summ. J. at 8.)

A party is necessary to the action in three situations: (1) the absent party is necessary to afford complete relief between the parties; (2) the absent party is needed to prevent impairment of its own interests; and (3) the absent party is needed to prevent multiple liability or inconsistent obligations. Fed. R. Civ. P. 19(a). None of these situations are present in this case. Complete relief may be afforded between Sagent and MSI on Sagent's breach of contract theory. Because

---

[5]Sagent has not identified "Does 1-50." Based on Sagent's complaint, I will assume that "Does 1-50" are MSI's shareholders. (*See* Compl. ¶ 3.)

MSI has breached its contract with Sagent, MSI is liable for damages. No other parties are necessary to grant Sagent complete relief against MSI for MSI's breach of contract.

"Does 1-50" are also not necessary to prevent impairment of their own interests or prevent multiple liability or inconsistent judgments. Very simply, Sagent has not identified the "Doe" defendants and has not sought judgment against them.

V.

Finally, Sagent has filed a motion to dismiss or, in the alternative, for summary judgment on MSI's counterclaim. Sagent bases this motion on three grounds: (1) this court is not the proper venue for Counts II-IV of MSI's counterclaim; (2) the allegedly fraudulent statements upon which MSI bases its fraud claim are not adequate to support a fraud claim; and (3) MSI's negligent misrepresentation claim fails because Sagent owed no duty to MSI.

A.

Sagent first contends that this court is not the proper venue for Counts II-IV of MSI's counterclaims because the forum selection clause in the JIPA requires MSI to bring Counts II-IV in Santa Clara County, California.[6]  (Sagent's Mem. Supp. Mot. to Dismiss at 2-4.)  This contention is without merit as to Count II, which asserts a claim against Sagent for negligent

---

[6]Generally, if a defendant asserts a permissive counterclaim, a plaintiff cannot object that venue is improper.  6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1424, at 182-83 (2d ed. 1990).  However, the operation of this rule must be limited by its rationale.  The latter has been described as follows: "Plaintiff, having chosen the forum in which to bring suit, is in no position to urge that a counterclaim cannot be entertained merely because, if prosecuted as an original action, it would have to be brought in another district."  *Id.* at 184.  In the present case, MSI requested, and was granted, a transfer from the Northern District of California. *Sagent Tech. v. Micros Sys., Inc.*, No. C 02-01746 PVT (N.D. Cal. May 29, 2002) (order denying motion to dismiss and granting motion to transfer).  Therefore, Sagent's venue challenge is appropriate.

misrepresentation regarding the June 30, 2000 purchase order. (*See* Countercl. ¶¶ 27-36.) The forum selection clause applies only to claims arising under the JIPA itself.

Sagent's contention is correct, however, as to Count III and IV, which assert, respectively, claims for breach of the covenant of good faith and fair dealing and fraud in the inducement. (*Id.* ¶¶ 37-61.). Absent fraud, overreaching, unfairness, or inconvenience, a forum selection clause must be enforced. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591-95 (1991). MSI does not allege that any of these factors apply here. Rather, it contends that Sagent waived its objection to improper venue by: (1) making a motion to allow Sagent's California attorney to appear *pro hac vice*, (2) filing a motion in limine to exclude parol evidence, and (3) conducting extensive discovery. (MSI's Opp'n to Mot. to Dismiss at 13-14.) MSI's argument fails.

Parties may waive objections to improper venue. *Broad. Co. v. Flair Broad. Corp.*, 892 F.2d 372, 377 (4th Cir. 1989). *See generally* 15 Wright et al., *supra*, § 3829, at 309-318. However, Sagent has done nothing to waive its rights. Its motion to allow its California attorney to appear *pro hac vice* and its motion in limine to exclude parol evidence concern Sagent's breach of contract claim, not Counts III-IV of MSI's counterclaims. As a result, those actions cannot amount to a waiver of Sagent's objection to improper venue concerning Counts III-IV of MSI's counterclaim.

Conducting discovery also does not waive an objection to improper venue as long as the defendant has made a timely objection to venue (*i.e.* in a responsive pleading or a motion to dismiss under Rule 12(b)). *See Broad Co.*, 892 F.2d at 377-78. Here, Sagent objected to venue in its answer to MSI's counterclaims and has filed a motion to dismiss pursuant to Rule 12(b)(3).

11

B.

Sagent next contends that summary judgment should be entered in its favor on MSI's fraud claim. (Sagent's Mem. Supp. Mot. to Dismiss at 4-6.) Proving fraudulent intent is necessary to prove a prima facie case of fraud in Maryland. *See, e.g.*, *James v. Weisheit*, 279 Md. 41, 44, 367 A.2d 482, 484 (1977). As discussed above, the evidence MSI has introduced to raise an inference of fraudulent intent is not sufficient. As a result, I will grant summary judgment in favor of Sagent on MSI's fraud claim.

C.

Finally, Sagent contends that MSI's claim for negligent misrepresentation must be dismissed because it owed MSI no duty. (Sagent's Mem. Supp. Mot. to Dismiss at 6.) In negligent misrepresentation cases involving only economic harm, a plaintiff must establish an "intimate nexus" between itself and the defendant to establish a duty. *Jacques v. First Nat'l Bank*, 307 Md. 527, 534-35, 515 A.2d 756, 759-60 (1986). The intimate nexus can be established by showing contractual privity or its equivalent. *Id.* Arms-length negotiations between representatives of commercial entities do not establish an intimate nexus unless "they invoke considerations of personal trust and reliance." *21st Century Props. Co. v. Carpenter Insulation & Coatings Co.*, 694 F. Supp. 148, 154 (D. Md. 1988); *see also Flow Indus., Inc. v. Fields Constr. Co.*, 683 F. Supp. 527, 529-30 (D. Md. 1988); *Weisman v. Connors*, 312 Md. 428, 446-48, 540 A.2d 783, 792-93 (1988).

Here, even accepting MSI's allegations, the parties were not in contractual privity when the alleged misrepresentations were made; they were in precontractual negotiations. Moreover, there is nothing about the transaction—a routine sale of computer software—that invokes

"considerations of personal trust and reliance."  *See Weisman*, 312 Md. at 448-51, 540 A.2d at 793-94 (finding a duty when the defendant made representations to the plaintiff in several face-to-face meetings regarding the financial status of the defendant's company and prospective opportunities for the plaintiff, which convinced the plaintiff to leave his job as Vice President of the Ford Motor Company to come work for the defendant's Toyota dealership).

A separate order is being entered herewith.

Date: <u>August 5, 2003</u>                               <u>/s/                                        </u>
                                                                J. Frederick Motz
                                                                United States District Judge